# IN THE SUPREME COURT OF IOWA

No. 12–2168

Filed April 11, 2014

**STATE OF IOWA,**

    Appellee,

vs.

**DARRELL ALLEN SHOWENS,**

    Appellant.

---

Appeal from the Iowa District Court for Scott County, Mark R. Fowler, Judge.

A sex offender who was convicted of loitering within 300 feet of a public library appeals his conviction. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, Martha J. Lucey, Assistant Appellate Defender, and Kyle Mendenhall, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Kevin R. Cmelik, Assistant Attorney General, Michael J. Walton, County Attorney, and Alan R. Havercamp and Robert C. Bradfield, Assistant County Attorneys, for appellee.

**MANSFIELD, Justice.**

A registered sex offender was arrested after sitting on a bench facing a public library. It was the middle of the day and he had been there approximately forty-five minutes. We must decide whether sufficient evidence exists to support the defendant's conviction by the district court for loitering within 300 feet of a public library in violation of Iowa Code section 692A.113(1)(*g*) (2011). Additionally, we are asked to decide whether the defendant's counsel was ineffective for failing to challenge the constitutionality of this criminal statute on vagueness grounds.

For the reasons discussed herein, after construing the statute to avoid constitutional difficulties, we are uncertain whether the district court applied the correct legal standard in finding the defendant guilty. Accordingly, we reverse the conviction and remand for further proceedings.

## I. Facts and Procedural History.

Darrell Showens has a 1999 conviction for third-degree sexual abuse involving a minor. Because of that conviction, he is required to register as a sex offender. *See* Iowa Code § 692A.103(1). In addition, Showens is subject to certain "exclusion zones." *See id.* § 692A.113. Among other things, he may not "[b]e present upon the real property of a public library without the written permission of the library administrator." *Id.* § 692A.113(1)(*f*). And, he may not "[l]oiter within three hundred feet of the real property boundary of a public library." *Id.* § 692A.113(1)(*g*).

On Friday, May 11, 2012, at around 1:30 p.m., Showens was seated on a park bench located across the street from the main entrance

to the downtown Davenport Public Library. He was facing the library, and the bench was seventy-two feet from the front door of the library.

Deputy Bawden of the Scott County Sheriff's Office, whose primary job is to register sex offenders and ensure compliance with the sex offender registry, was leaving the library on a separate investigation. He spotted Showens. Deputy Bawden could identify Showens based on his previous familiarity with him. The deputy proceeded to his vehicle which was parked outside the library. From the vehicle, he confirmed that Showens was still a registered sex offender required to comply with Iowa Code section 692A.113. For the next ten minutes, Deputy Bawden observed Showens sitting on the bench, eating chips and drinking what appeared to be a sports beverage.

At this point, Deputy Bawden approached Showens and asked him what he was doing. Showens first said he was waiting for a friend, but when Deputy Bawden offered to wait with him, Showens said his friend had left twenty minutes ago. When Deputy Bawden asked Showens what he had been doing since his friend left, Showens stated he had been scratching lottery tickets. Because Deputy Bawden did not observe any residue from scratch tickets around, he asked Showens to show him the lottery tickets. Showens responded that he had already thrown them away.

Deputy Bawden then asked Showens why he was sitting across from the library. Showens indicated he was waiting for a bus. Deputy Bawden pointed out that the bench was not a bus stop, and Showens responded that he was planning to catch a bus to his home at a stop that was two blocks away. As Deputy Bawden later noted, Showens's home was only seven blocks away, or five blocks beyond the bus stop.

Several times during the conversation, Showens indicated he was "just hanging out" on the bench. He told Deputy Bawden he was not loitering and that he did not think he was within 300 feet of the library. However, when Deputy Bawden asked him if he believed he was a football field away from the library, Showens admitted he was not. At the end of the conversation, Deputy Bawden arrested Showens and transported him to the Scott County Jail.

By the time Deputy Bawden arrested Showens, twenty minutes had passed since he had first seen Showens sitting on the bench. Showens later admitted he had been sitting across from the library for forty-five minutes. Showens also admitted that he had been informed of the prohibition on entering a public library without permission from the administrator, as well as the prohibition on loitering within 300 feet of a public library.

Showens was charged with failure to comply with the sex offender exclusion zone requirements based on loitering within 300 feet of a public library. *See id.* §§ 692A.111(1), .113(1)(*g*). He went to trial before the court on September 13, 2012. Both Deputy Bawden and Showens testified, and the parties also agreed to enter into evidence the minutes of testimony that included Deputy Bawden's report.

Showens did not contest that he was a registered sex offender, that he was subject to the restriction in section 692A.113(1)(*g*), that he had received notice of the restriction before, and that he was within 300 feet of the library on the day in question. He only claimed his actions did not constitute "loitering." At the conclusion of the trial, his attorney stated, "We are not quarreling with the fact we were there and within 300 feet of the library, and the question is whether it was loitering under the definition."

In a written ruling on September 18, the district court denied the defense's motion for directed verdict and found Showens guilty of failure to comply with the sex offender exclusion zone requirements, in violation of sections 692A.111(1) and 692A.113(1)(*g*). As the court explained,

> The Court finds there is substantial evidence in the record that would warrant a reasonable person to believe that Mr. Showens was seated in front of the Davenport library in order to become familiar with a location where a potential victim could be found, or to locate a potential victim. This is sufficient to satisfy the element that Showens was engaged in "loitering" within three hundred feet of the Davenport Public Library.

Showens was sentenced to 240 days in jail with all but three days suspended. Additionally, Showens was ordered to pay a fine of $625 and serve 213 hours of community service.

Showens appealed, arguing that there was insufficient evidence he was "loitering" in violation of section 692A.113(1)(*g*). Showens also maintained that his trial counsel had been ineffective for failing to argue that the statutory definition of "loitering" was unconstitutionally vague and violated the Due Process Clauses of the United States and Iowa Constitutions. We retained the appeal.

## II. Standard of Review.

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013).

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it.

*State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013) (citation and internal quotation marks omitted).

"We review claims of ineffective assistance of counsel de novo." *State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011).

**III. Analysis.**

**A. The Statutory Background**. Showens argues that the State failed to present sufficient evidence to sustain his conviction. Iowa Code section 692A.111 provides that a violation of section 692A.113 is "an aggravated misdemeanor for a first offense." Iowa Code § 692A.111(1). "For purposes of this subsection, a violation occurs when a sex offender knows or reasonably should know of the duty to fulfill a requirement specified in this chapter as referenced in the offense charged." *Id.* The district court found Showens violated section 692A.113(1)(*g*) which prohibited him from loitering "within three hundred feet of the real property boundary of a public library." *Id.* § 692A.113(1)(*g*).

> Under chapter 692A, loitering is defined as
>
> remaining in a place or circulating around a place under circumstances that would warrant a reasonable person to believe that the purpose or effect of the behavior is to enable a sex offender to become familiar with a location where a potential victim may be found, or to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim.

*Id.* § 692A.101(17).

These statutes are contained within Iowa Code chapter 692A, entitled "Sex Offender Registry." While persons convicted of many types of sex offenses are required to register under this chapter, *see id.* § 692.103, the restrictions of section 692A.113 only apply to persons "convicted of a sex offense against a minor or a person required to register as a sex offender in another jurisdiction for an offense involving a minor," *id.* § 692A.113. The section 692A.113(1) exclusion zones include elementary and secondary schools and their vehicles, libraries, child care facilities, and premises "intended primarily for the use of minors" such

as playgrounds, recreational areas, and swimming pools. *Id.* § 692A.113(1). Offenders are generally not allowed on the property without permission and are prohibited from loitering within 300 feet of the real property boundaries of each of these locations. *Id.* These exclusionary provisions represent a significant change from the legislature's previous restrictions on registered sex offenders.

In 2009, the earlier provisions of chapter 692A were repealed and replaced with the current provisions. *See* Iowa Code §§ 692A.1–.16 (2009) (repealed by 2009 Iowa Acts ch. 119, § 31); 2009 Iowa Acts ch. 119, §§ 1–30 (codified at Iowa Code §§ 692A.101–.130 (Supp. 2009)). The pre-2009 version of chapter 692A had more severe residency restrictions but no restrictions on an offender's mere presence at a location. *See* Iowa Code § 692A.2A (2009) (prohibiting those convicted of some criminal offenses against a minor, including many sexual offenses, from living within 2000 feet of elementary schools, secondary schools, or child care facilities); *see also Doe v. Miller*, 405 F.3d 700, 706 (8th Cir. 2005) (noting the district court determined that, under 692A.2A, "restricted areas in many cities encompass[ed] the majority of the available housing in the city, thus leaving only limited areas within city limits available for sex offenders to establish a residence" and some smaller towns offered no available locations for a sex offender to reside).

Since 2009, residency restrictions only apply to sex offenders convicted of an aggravated offense against a minor. *See* Iowa Code § 692A.114(1)(*c*) (2011). However, while residency restrictions were relaxed, the legislature added the exclusionary zone provisions. *Id.* § 692A.113(1).

Based on the statutory definition of loitering in the 2009 legislation, the State had to prove that Showens:

(1) was "remaining in a place or circulating around a place" within 300 feet of a public library;

(2) "under circumstances that would warrant a reasonable person to believe that the purpose or effect of the behavior";

(3) was to enable Showens "to become familiar with a location where a potential victim may be found, or to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim."

*See id.* § 692A.101(17).

As noted above, the district court convicted Showens after determining that the facts "warrant a reasonable person to believe that Mr. Showens was seated in front of the Davenport library in order to become familiar with a location where a potential victim could be found, or to locate a potential victim." In short, according to the court's ruling, a reasonable person would believe that Showens's *purpose* was *either* to become familiar with a location where a potential victim could be found *or* to locate a potential victim.

**B. Construing the Statute to Avoid Void-for-Vagueness Concerns**. Before we assess whether there was sufficient evidence to sustain the district court's finding of guilt, we need to consider what the statute requires. In doing so, we are guided by "our mandate to construe statutes in a fashion to avoid a constitutional infirmity where possible." *State v. Walker*, 804 N.W.2d 284, 293–94 (Iowa 2011) (citation and internal quotation marks omitted); *see also Simmons v. State Pub. Defender*, 791 N.W.2d 69, 74 (Iowa 2010) ("If fairly possible, a statute will be construed to avoid doubt as to constitutionality.").

We previously went through the process of construing one of our sex offender laws to sidestep a potential vagueness defect. In *Formaro v. Polk County*, a sex offender brought a constitutional challenge, including a void-for-vagueness challenge, to the residency restrictions in the former

version of chapter 692A. 773 N.W.2d 834, 837 (Iowa 2009). As we explained there, "In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute any reasonable construction to uphold it." *Id.* at 840–41 (citations and internal quotation marks omitted). We then interpreted the statutory residency restrictions as applying to locations where the offender "habitual[ly] sleep[s]." *Id.* at 841. And having done so, we rejected the constitutional void-for-vagueness challenge. *Id.*

> We have said that
>
> The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits vague statutes.
>
> A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.

*State v. Musser*, 721 N.W.2d 734, 745 (Iowa 2006) (citations and internal quotation marks omitted). We have also said that a "similar prohibition has been recognized under the Iowa due process clause found in article I, section 9 of the Iowa Constitution." *Formaro*, 773 N.W.2d at 840.[1]

Accordingly, we will review the constitutional due process requirement in the context of loitering laws. We will then apply what has been called "avoidance theory" to see if we need to clarify the meaning of sections 692A.101(17) and 692A.113(1)(*g*) in light of those constitutional mandates. *See State v. Nail*, 743 N.W.2d 535, 539–40 (Iowa 2007) (explaining the term "avoidance theory").

---

[1]There is a third underpinning to the void-for-vagueness doctrine. A statute cannot "sweep so broadly as to prohibit substantial amounts of constitutionally protected speech." *Lewis v. Jaeger*, 818 N.W.2d 165, 183 (Iowa 2012). But free speech is not at issue here. *See id.*

In 1999, the United States Supreme Court addressed the constitutionality of a loitering ordinance in a significant case. *See City of Chicago v. Morales,* 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).[2] *Morales* involved a Chicago ordinance that prohibited gang members from loitering with any person in any public place. *Id.* at 45–46, 119 S. Ct. at 1853, 144 L. Ed. 2d at 74. Loitering was defined by the ordinance as "remain[ing] in any one place with no apparent purpose." *Id.* at 47, 119 S. Ct. at 1853, 144 L. Ed. 2d at 74 (internal quotation marks omitted). If a police officer reasonably believed that one or more persons gathered in a public place were gang members and had no purpose for remaining in the location, the ordinance required the officer to order all persons that were gathered to disperse. *Id.* Any person who disobeyed the order, whether a gang member or not, was guilty of violating the ordinance and subject to a fine of up to $500, imprisonment of up to six months, and up to 120 hours of community service. *Id.*

In a 6–3 decision, the Supreme Court found the ordinance unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause. *Id.* at 51, 119 S. Ct. at 1856, 144 L. Ed. 2d at 77. Writing for the Court on this point, Justice Stevens faulted the ordinance's broad definition of "loitering" as meaning "to remain in any one place with no apparent purpose." *Id.* at 61, 119 S. Ct. at 1861, 144 L. Ed. 2d at 83 (internal quotation marks omitted). He noted that this definition confers "vast discretion" on the police, "is inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene," and "extends its scope to encompass

---

[2]We quoted from *Morales* in *Musser.  See Musser,* 721 N.W.2d at 746.

harmless conduct." *Id.* at 61–63, 119 S. Ct. at 1861–62, 144 L. Ed. 2d at 83–84.

Again writing for the Court, Justice Stevens also noted that the Illinois Supreme Court had declined to narrow what "no apparent purpose" meant. *Id.* at 61, 119 S. Ct. at 1861, 144 L. Ed. 2d at 83. As he put it, "[P]ersons who stand or sit in the company of a gang member may be ordered to disperse unless their purpose is apparent." *Id.* at 60, 119 S. Ct. at 1861, 144 L. Ed. 2d at 82. He added, "We have no authority to construe the language of a state statute more narrowly than the construction given by that State's highest court." *Id.* at 61, 119 S. Ct. at 1861, 144 L. Ed. 2d at 83. Yet he seemingly concluded that the ordinance would be constitutional if it "only applied to loitering that had an apparently harmful purpose or effect." *Id.* at 62, 119 S. Ct. at 1862, 144 L. Ed. 2d at 84.

Concurring in part and concurring in the judgment, Justice O'Connor, joined by Justice Breyer, highlighted her concerns:

> As it has been construed by the Illinois court, Chicago's gang loitering ordinance is unconstitutionally vague because it lacks sufficient minimal standards to guide law enforcement officers. In particular, it fails to provide police with any standard by which they can judge whether an individual has an "*apparent* purpose." Indeed, because any person standing on the street has a general "purpose"— even if it is simply to stand—the ordinance permits police officers to choose which purposes are *permissible.*

*Id.* at 65–66, 119 S. Ct. at 1863–64, 144 L. Ed. 2d at 86 (O'Connor, J., concurring in part and concurring in the judgment). Justice O'Connor further observed,

> In my view, the gang loitering ordinance could have been construed more narrowly. The term "loiter" might possibly be construed in a more limited fashion to mean "to remain in any one place with no apparent purpose other than to establish control over identifiable areas, to intimidate

others from entering those areas, or to conceal illegal activities." Such a definition would be consistent with the Chicago City Council's findings and would avoid the vagueness problems of the ordinance as construed by the Illinois Supreme Court.

*Id.* at 68, 119 S. Ct. at 1864–65, 144 L. Ed. 2d at 87.[3]

In a dissent joined by Chief Justice Rehnquist and Justice Scalia, Justice Thomas emphasized that the ordinance "does not criminalize loitering *per se.* Rather, it penalizes loiterers' failure to obey a police officer's order to move along." *Id.* at 106, 119 S. Ct. at 1883, 144 L. Ed. 2d at 111 (Thomas, J., dissenting). As he put it, "There is nothing 'vague' about an order to disperse." *Id.* at 112, 119 S. Ct. at 1886, 144 L. Ed. 2d at 114. Yet Justice Thomas also disputed the notion that the definition of loitering itself failed to provide adequate notice: "Members of a group standing on the corner staring blankly into space, for example, are likely well aware that passersby would conclude that they have 'no apparent purpose.'" *Id.* at 114, 119 S. Ct. at 1887, 144 L. Ed. 2d at 116.

In his own separate dissent, Justice Scalia mentioned several of these same points. *See id.* at 90, 119 S. Ct. 1875, 144 L. Ed. 2d at 101 (Scalia, J., dissenting) (noting the ordinance criminalizes "the refusal to

---

[3]In his separate opinion concurring in part and concurring in the judgment, Justice Kennedy voiced the following concern:

> A citizen, while engaging in a wide array of innocent conduct, is not likely to know when he may be subject to a dispersal order based on the officer's own knowledge of the identity or affiliations of other persons with whom the citizen is congregating; nor may the citizen be able to assess what an officer might conceive to be the citizen's lack of an apparent purpose.

*Morales*, 527 U.S. at 69–70, 119 S. Ct. at 1865, 144 L. Ed. 2d at 88 (Kennedy, J., concurring in part and concurring in the judgment). Similarly, in his separate opinion concurring in part and concurring in the judgment, Justice Breyer worried that the phrase "with no apparent purpose" results in "open-ended discretion" because "one always has some apparent purpose." *Id.* at 70, 119 S. Ct. at 1866, 144 L. Ed. 2d at 89 (Breyer, J., concurring in part and concurring in the judgment).

obey a dispersal order, as to which there is no doubt of adequate notice of the prohibited conduct"); *id.* at 93, 119 S. Ct. at 1877, 144 L. Ed. 2d at 103 (observing that it is "not difficult to perceive" when persons "remain [in any one place] without any apparent reason for *remaining there*").

As we read this portfolio of opinions, it seems clear that one constitutional flaw in the Chicago ordinance was its effort to criminalize staying in one place "with no apparent purpose"—assuming other elements of the crime were also met. Too vague; too much discretion. At the same time, the Court indicated a definition of loitering would be constitutional if it was limited to hanging out *that had an apparently improper purpose. See id.* at 62, 119 S. Ct. at 1862, 144 L. Ed. 2d at 84 (majority opinion); *id.* at 68, 119 S. Ct. at 1864–65, 144 L. Ed. 2d at 87 (O'Connor, J., concurring in part and concurring in the judgment).[4]

This distinction, we believe, is captured by a recent decision of the South Dakota Supreme Court, *State v. Stark,* 802 N.W.2d 165 (S.D. 2011). That case involved a sex offender who, after getting off work in the early evening, circled a park where numerous children were playing for approximately twenty minutes in his van. *Id.* at 167–68. The court there had to determine the constitutionality of a South Dakota statute that prohibited convicted sex offenders from loitering in a "community safety zone." *Id.* at 167. Under the statute, loitering was defined as "remain[ing] for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of

---

[4]To the extent Justice Stevens was speaking for the Court, we follow his majority opinion. Otherwise, under the narrowest grounds doctrine, we follow Justice O'Connor's opinion concurring in part and concurring in the judgment. *See, e.g., State v. Iowa Dist. Ct.,* 801 N.W.2d 513, 522 (Iowa 2011) (discussing the narrowest grounds doctrine).

observing or contacting minors[.]" *Id.* at 168 (citation and internal quotation marks omitted).

The court pointed out the statute in question was different from the ordinance invalidated in *Morales*:

> First, SDCL 22–24B–24 only applies to persons required to register as sex offenders in South Dakota, a meticulously defined class of individuals. Second, by defining the term "community safety zone," SDCL 22–24B–22 describes the precise area to which SDCL 22–24B–24 applies. The statute does not use amorphous terms like "neighborhood" or "locality," which are "elastic and dependent upon the circumstances." *Finally, and perhaps most importantly, SDCL 22–24B–24 distinguishes between innocent and harmful conduct. By requiring that the loitering be "for the primary purpose of observing or contacting minors," the South Dakota Legislature limited the statute's application to loitering that has an "apparently harmful purpose or effect."*

*Id.* at 171 (citations omitted) (emphasis added). The court concluded the statute was sufficient to provide the defendant with notice that his conduct was prohibited, and it upheld the defendant's conviction as supported by sufficient evidence. *Id.* at 171, 172–73.

Iowa's sex offender loitering statute, which we have already quoted, is somewhat different from South Dakota's. It prohibits remaining in an area when a reasonable person would believe "the purpose or effect of the behavior is to enable a sex offender to become familiar with a location where a potential victim may be found, or to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim." *See* Iowa Code § 692A.101(17).[5]

---

[5]Notably, the Iowa statute uses some of the same terms as the revised ordinance adopted by the City of Chicago in the wake of *Morales*. That ordinance is triggered when a police officer observes a member of a criminal street gang engaged in gang loitering, which is defined as follows:

> *Gang loitering* means remaining in any one place under circumstances that would warrant a reasonable person to believe that the purpose or effect of that behavior is to enable a criminal street gang to establish

To avoid the constitutional problems noted in *Morales,* the Iowa statute needs to be interpreted as limited to loitering with some apparently improper purpose, as opposed to generalized loitering or loitering with no apparent purpose. Generally speaking, the words of the statute already take us there. Thus, staying in one place is criminally prohibited only if a reasonable person would believe the purpose or effect of the behavior is (a) "to become familiar with a location where a potential victim may be found," (b) "to satisfy an unlawful sexual desire," or (c) "to locate, lure, or harass a potential victim." *See id.*

Alternatives (b) and (c) are improper purposes. Alternative (a) requires some additional discussion. Arguably, it is ambiguous. It could be read as rendering unlawful the act of remaining in a place when a reasonable person would believe the defendant's purpose is to become familiar with a location *because* that location has or will have one or more potential victims. Or it could be read as prohibiting remaining in a place when a reasonable person would believe the defendant's purpose is to become familiar with a location *that coincidentally happens to have one or more potential victims.* In other words, would a reasonable person believe the defendant was casing the joint or, instead, does the behavior appear to be benign or at worst innocuous?

This strikes us as a critical distinction. Practically anybody who passes time within 300 feet of a property is going to become more

---

control over identifiable areas, to intimidate others from entering those areas, or to conceal illegal activities.

Chi., Ill., Mun. Code § 8-4-015(d)(1) (2013); *see also* Kim Strosnider, *Anti-Gang Ordinances After* City of Chicago v. Morales*: The Intersection of Race, Vagueness Doctrine, and Equal Protection in the Criminal Law,* 39 Am. Crim. L. Rev. 101, 135–36 (2002) (quoting this language and stating, "This language is taken verbatim from dicta in Justice O'Connor's *Morales* concurrence.").

familiar with that property.[6] This is analogous to allowing a crime to be triggered when a person remains in a place with "no apparent purpose"— the formulation that the Supreme Court overturned in *Morales* for being too vague. The same dangers of lack of notice and unbridled government discretion would arise if we construed sections 692A.101(17) and 692A.113(1) as criminalizing mere "familiarity," without some improper purpose to go along with it. In sum, to meet the constitutional concerns discussed in *Morales*, we interpret the phrase "to enable a sex offender to become familiar with a location where a potential victim may be found" as requiring a determination that familiarity was tied to the potential presence of victims.[7]

We express no view on whether the legislature could enact a statute that prohibits convicted sex offenders from loitering in an exclusionary zone, where loitering is defined as remaining in the zone for *any* reason. In such event, there would be less uncertainty as to what the statute prohibits. *See United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012) (upholding against a vagueness challenge lifetime supervision conditions that include a prohibition on "loitering where minors congregate, such as playgrounds, arcades, amusement parks, recreation parks, sporting events, shopping malls, swimming pools, etc." (internal quotation marks omitted)); *In re Rusty Nail Acquisition, Inc.*, 980 A.2d 758, 766–67 (Vt. 2009) (rejecting a vagueness attack on an ordinance that prohibits licensed establishments from allowing intoxicated persons

---

[6]As Showens's counsel puts it, "[A]lmost any conduct or behavior within a certain area for any amount of time will consequently make a person more familiar with their surroundings . . . ."

[7]Indeed, at oral argument the State conceded that chapter 692A was not intended to reach the situation where the defendant would have a legitimate reason for observing the library, such as a need to survey the grounds in order to bid a job.

to "loiter" on the premises, and noting loiter in this context means simply to "remain"); *see also Formaro*, 773 N.W.2d at 837 (rejecting various constitutional challenges including a vagueness challenge to the residency restrictions in the previous version of chapter 692A).

True, Justice Stevens's plurality opinion also asserts that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Morales*, 527 U.S. at 53, 119 S. Ct. at 1857, 144 L. Ed. 2d at 78 (plurality opinion). But on this point, he was speaking for only three members of the court, not a majority. *See id.* at 67, 119 S. Ct. at 1864, 144 L. Ed. 2d at 87 (O'Connor, J., concurring in part and concurring in the judgment) ("[T]here is no need to consider the other issues briefed by the parties and addressed by the plurality. I express no opinion about them."); *see also Doe v. City of Lafayette*, 377 F.3d 757, 772–73 (7th Cir. 2004) (noting that Justice Stevens was speaking for only three justices in *Morales* and finding that a convicted sex offender does not have a fundamental right to loiter innocently in a public park).

Thus, we have simply decided today that if section 692A.113(1)(*g*) were interpreted as criminalizing the mere act of remaining in a place "to become familiar with a location"—with only the added proviso that the location might be visited by minors—the resulting prohibition would be so vague as to raise the unbridled discretion concerns that drove the *Morales* due process decision.

Showens goes somewhat farther and argues that a loitering statute suffers from constitutional defects whenever the definition of loitering turns on how a "reasonable person" would view the defendant's purpose. In short, Showens concedes it would be constitutional to prohibit sex offenders from remaining in an area for a particular improper purpose,

but argues it is unconstitutional to prohibit them from remaining in an area "under circumstances that would warrant a reasonable person to believe" they were engaged in that same improper purpose.

We are not persuaded. For one thing, both Justice Stevens and Justice O'Connor indicated in *Morales* that an ordinance prohibiting loitering with an improper "apparent" purpose would be constitutional. 527 U.S. at 62, 119 S. Ct. at 1862, 144 L. Ed. 2d at 84 (majority opinion); *id.* at 68, 119 S. Ct. at 1864, 144 L. Ed. 2d at 87 (O'Connor, J., concurring in part and concurring in the judgment). They did not believe a standard based on how a hypothetical outsider viewed the defendant's conduct would invalidate the ordinance; rather, it would preserve it. And the South Dakota statute at issue in *Stark* also employed a reasonable person test. *See Stark*, 802 N.W.2d at 168.[8]

Moreover, our criminal law has other examples of statutes where the commission of a crime depends, in part, on what a hypothetical "reasonable person" would conclude. An element of stalking is met when a person purposefully engages in a course of conduct directed at a person "that would cause a reasonable person to fear bodily injury." Iowa Code § 708.11(2)(*a*).[9] Whether a person can successfully assert

---

[8]Showens points out that when it came time for the South Dakota Supreme Court to decide whether there was sufficient evidence to sustain Stark's conviction, it seemingly focused on Stark's *subjective* intent, rather than how a *reasonable person* would view his intent. *See* 802 N.W.2d at 172–73 ("[W]e conclude that the State presented sufficient evidence that Stark's primary purpose for remaining in the community safety zones was to observe or contact minors."). But the South Dakota court never said it was modifying or even interpreting the actual statutory language. Most likely, the court simply did not see a meaningful difference between the two standards. We suspect that a fact finder asked to decide whether (1) the defendant had a particular purpose or (2) the defendant engaged in conduct under circumstances that would warrant a reasonable person to believe the defendant had a particular purpose would go through a similar thought process in both instances.

[9]*See State v. Porelle*, 822 A.2d 562, 564, 566–67 (N.H. 2003) (rejecting a void-for-vagueness challenge to New Hampshire's stalking statute which defined stalking as "[t]o

self-defense to a criminal charge depends on what "a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss." *Id.* § 704.1. An element of the crime of indecent exposure is whether the person "knows or reasonably should know that the act is offensive to the viewer." *Id.* § 709.9(2). A person commits the serious misdemeanor of malicious prosecution when he or she causes or attempts to cause another to be indicted or prosecuted for a public offense, "having no reasonable grounds for believing that the person committed the offense." *Id.* § 720.6.

We also allow the determination of whether a defendant has a "dangerous weapon," which often has a tremendous impact on the available criminal penalties, to depend in certain instances on the *apparent* purpose as opposed to the *actual* purpose with which an instrument is used. *See* Iowa Code § 702.7 (defining "dangerous weapon" to include any weapon capable of inflicting death "which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury"); *State v. Ortiz*, 789 N.W.2d 761, 767 (Iowa 2010) (holding that a box cutter was a dangerous weapon in a particular case and stating that under the foregoing definition, the "inquiry is objective" and the definition is met when "the defendant engages in a personal confrontation with another while possessing an instrument capable of causing bodily harm").

In *Lewis v. Jaeger*, we upheld the constitutionality of an ordinance that had been relied upon to lock a tenant out of her apartment who was

---

appear on more than one occasion for no legitimate purpose in proximity to the residence, place of employment, or other place where another person is found under circumstances that would cause a reasonable person to fear for his personal safety").

leaving her water and gas stove on unattended for extended periods of time. 818 N.W.2d 165, 170–71, 185 (Iowa 2012). The ordinance read:

> Whenever, in the judgment of the city manager, an emergency exists which requires immediate action to protect the public health, safety or welfare, an order may be issued, without a hearing or appeal, directing the owner, occupant, operator or agent to take such action as is appropriate to correct or abate the emergency.

*Id.* at 174 (citation and internal quotation marks omitted). To address the concern that an "emergency" could be whatever city officials deem to be an emergency in their exclusive "judgment," we found that the ordinance "may be narrowed through an implied term of objective reasonableness." *Id.* at 185. Similarly, in this case, we believe the objective reasonableness test already set forth in section 692A.101(17) suffices to give fair warning and constrain governmental discretion.

In *State v. Milner*, we dealt with a constitutional challenge to Iowa's criminal threat statute, which makes it a felony when a person " 'threatens to place . . . any incendiary or explosive device or material, or any destructive substance or device in any place where it will endanger persons or property.' " *State v. Milner*, 571 N.W.2d 7 (Iowa 1997) (quoting Iowa Code § 712.8). To avoid the concern that the statute might cover jokes, idle talk, or political hyperbole, we held the "prohibited statements must be understandable as a threat by a reasonable person of ordinary intelligence." *Id.* at 10. Having so construed the statute, we found it neither overbroad nor unconstitutionally vague. *Id.* at 12–15; *see also State v. Soboroff*, 798 N.W.2d 1, 8–10 (Iowa 2011) (finding sufficient evidence that a reasonable person could believe the defendant's website posting that referred to putting a psychotropic drug in the city water supply was an actual threat, but remanding for a new trial because the jury had not been instructed on this standard).

Otherwise stated, a statute that criminalizes remaining in a place or circulating around a place, by a sex offender convicted of a sex offense against a minor, "under circumstances that would warrant a reasonable person to believe" the sex offender's purpose is to look for potential victims or to check out a location because it contains potential victims, is not void for vagueness under the Fourteenth Amendment's Due Process Clause.[10]

Showens also maintains that even if the foregoing standard is sufficiently clear to meet federal due process requirements, it does not satisfy Iowa's due process clause—article I, section 9 of the Iowa Constitution. To overcome any Iowa due process objections, according to Showens, it must be an element of the crime that he actually *intended* to scout for potential victims or scout out a location because it had

---

[10]The statutes also make it a crime for a sex offender to remain within 300 feet of a library "under circumstances that would warrant a reasonable person to believe that the . . . *effect* of the behavior is to enable a sex offender to become familiar with a location where a potential victim may be found, or to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim." Iowa Code §§ 692A.101(17) (emphasis added), .113(1)(*g*). As noted above, Showens was not convicted under the "effect" prong of the law. We express no opinion on its constitutionality.

Typically, we do not consider facial due process challenges to a statute unless a fundamental right is involved. *State v. Philpott*, 702 N.W.2d 500, 503 (Iowa 2005). We question whether a fundamental right is at issue here. Section 692A.113(1) does not affect Showens's ability to travel throughout the city or even to "hang out" in most of it. It only curtails his ability to remain in or circulate around certain predefined locations. *Cf. Formaro*, 773 N.W.2d at 840, 842 (noting that the residency restrictions on sex offenders "do[] not implicate the traditional protections of the freedom of travel" and stating "there is no fundamental right to live where you want"). Furthermore, we are dealing with a separate part of the statute. *See State v. McKee*, 392 N.W.2d 493, 494 (Iowa 1986) (holding that when a statute criminalized conduct that was injurious to either "the physical, mental or moral welfare" of a resident of a health care facility, the court did not need to address the portion of the statute referring to "mental or moral welfare" where only an injury to physical welfare was at issue (citation and internal quotation marks omitted)). Thus, we will not consider at this time whether the "effect" prong passes due process muster.

potential victims. It is not enough that *a reasonable person would believe* this was his purpose based on objective circumstances.

While we reserve the right to interpret article I, section 9 in a manner different from the Fourteenth Amendment's Due Process Clause, we are not persuaded the Iowa Constitution renders sections 692A.101(17) and 692A.113(1), as we have already clarified them, void for vagueness. As noted above, we have actually approved the use of reasonable person standards in other criminal law contexts. Thus, a person may be found guilty of making a threat under section 712.8, without having intended to carry out the threat or even to put people in fear, so long as his or her words convey a threat and a person objectively would view it as a "true threat." *See Soboroff*, 798 N.W.2d at 8–10.

There is a trade-off here. Under the versions of sections 692A.101(17) and 692A.113(1)(*g*) enacted by the legislature, Showens cannot be found guilty merely because a fact finder concludes beyond a reasonable doubt he has the intent to be a predator, regardless of what the objective circumstances may indicate about his reasons for being outside the library. On the other hand, if the objective circumstances indicate to a fact finder beyond a reasonable doubt that his purpose is predatory, a claim that he did not have such intent will not save him. We cannot find that a constitutional threshold is being crossed simply because the legislature defined the offense one way rather than the other. We believe the legislature's objective standard, when combined with the requirements that the defendant—a sex offender previously convicted of a sex offense against a minor—has knowingly remained within 300 feet of a public library, affords sufficient specificity to be constitutional. Notably, Showens's experienced and able appellate

counsel cites no case law from any jurisdiction to support her theory that actual predatory intent is constitutionally required.

**C. Was the Evidence Sufficient?** We now review the record for sufficiency of the evidence with these considerations in mind. By his own admission, Showens sat on the park bench for around forty-five minutes with a clear unobstructed view of the public library. The bench was less than seventy-five feet from the library property. Furthermore, Showens admitted to Deputy Bawden that he knew he was within a football field (i.e., 300 feet) of the property. For the entire time that Deputy Bawden observed Showens, he was "facing" the library. His explanations for waiting there were inconsistent and made little sense. First, he was waiting for a friend, who had already left. Then, he was scratching lottery tickets, but no tickets could be found. Finally, he was waiting for a bus to take him home, although the bus stop was two blocks away and his home was only seven blocks away.

Undoubtedly, Showens was "remaining in a place" within 300 feet of the library property. We also agree that substantial evidence *could* support a finding that Showens had violated section 692A.113(1)(*g*). Given the prolonged time he was on the bench looking at the public library, his seeming lack of a legitimate reason to be there, and his apparently false explanations for what he was doing, a fact finder could conclude that a reasonable person would believe the purpose of the behavior was to locate a potential victim or to become familiar with a location because a potential victim could be found there.

The problem is that the district court did not have the benefit of our construction of the statute, so we are unsure whether it applied the appropriate legal standard. Again, an apparent purpose merely to become familiar with the library would not be enough. From the

perspective of a reasonable person, it would have to appear that Showens's purpose was to scout for potential victims or to scout the library because it offered potential victims.

Some of the evidence here could potentially be viewed as supporting Showens's innocence. He was eating a bag of chips while sitting on the bench. The record does not indicate how large a bag it was. Showens was found outside the public library around 1:30 p.m. on a school day—not the time when large numbers of school-age children would normally be present. Showens's refusal to get up and leave when Deputy Bawden arrived could possibly be viewed as a sign of orneriness, rather than deviance. Perhaps, as the defendant claimed at times, he was "just hanging out." In any event, we are not the trier of fact.[11]

## IV. Conclusion.

For the foregoing reasons, we reverse the judgment of conviction below and remand for new findings, conclusions, and judgment on the existing record consistent with this opinion.

**REVERSED AND REMANDED.**

---

[11]Some language in the district court's generally thorough and well-written ruling suggests the court may have believed Showens could be found guilty merely because a reasonable person would believe he had no *good* reason to be outside the library, as opposed to a *sinister* one. For example: "There were several places outside the exclusionary zone where he could have sat, met his friend, finished his chips, or waited for a bus." We are talking about a fine line, because the lack of a valid motive can often be used in the criminal law as a basis for inferring a bad motive. But the point remains that an inference has to be drawn; lacking an objectively good reason for being outside the library is not in itself a crime.