# IN THE COURT OF APPEALS OF IOWA

No. 13-1056
Filed June 25, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL CHRISTOPHER FLEMING,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.

A defendant appeals his conviction for possession of a controlled substance with intent to deliver. **AFFIRMED.**

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Sean M. Corpstein, Legal Intern, John Sarcone, County Attorney, and Stephan Bayens, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Michael Fleming appeals his conviction and sentence for possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(b)(7) (2011). He claims there is insufficient evidence to support the conviction, as only circumstantial evidence linked him to the controlled substance, methamphetamine. We conclude there is substantial evidence linking Fleming to the possession of the methamphetamine with intent to deliver under the doctrine of constructive possession. Accordingly, we affirm.

**I. Background Facts and Proceedings**

Early in the evening on March 19, 2013, Officer Brandon Killiam of the Pleasant Hill Police Department was on patrol in the east Des Moines/Pleasant Hill area. He noticed a passenger in a vehicle not wearing a seatbelt. The passenger, who ducked when he saw Killiam's police cruiser, would later be identified as the defendant, Michael Fleming. Killiam made a U-turn and attempted to catch up to the vehicle, which turned down a residential street into a driveway. When Killiam pulled up behind the vehicle, the driver was getting out of the car, Killiam noticed the passenger door was open, and the passenger was gone.

Killiam spoke briefly with the driver, Frank Cooper, who falsely identified Fleming as Chad Wright, and indicated Wright had gone into a home to visit a friend. Killiam asked Cooper whether the passenger was fleeing, and Cooper stated he was not. However, a neighbor soon approached Killiam and informed him she had seen the passenger running toward Four Mile Creek. It is important

to note that the area known as Four Mile Creek is bordered entirely by private property, which is typically clean and well-manicured. It is not publicly accessible.

Killiam went to look for Fleming and later saw Fleming walking along Four Mile Creek. Killiam pursued Fleming, and when he was within approximately 100 to 150 yards, he identified himself as a police officer and ordered Fleming to stop. Fleming responded by jumping down into the creek bed, which caused Killiam to lose sight of Fleming due to the elevation of the creek bed in relation to the bank on which Killiam stood.

Killiam then reached the spot where Fleming had jumped and could see ripples in the water on the far side of the bank, as if something was thrown into the water a short time before. However, Killiam did not see Fleming throw anything into the water. Once Killiam located Fleming, he ordered him up out of the creek bed. Fleming complied and was handcuffed by Killiam. At this time, Killiam noticed some items floating in the water. He left Fleming handcuffed on the bank and jumped into the creek bed to try to retrieve the items. Fleming again attempted to flee, despite being handcuffed. Killiam had to abandon his retrieval efforts in order to pursue Fleming again. He caught Fleming, led him back to the patrol car, and searched him. Fleming was carrying clear, empty plastic baggies, lottery cards, and $130.00 in cash.

By this time additional officers had arrived and accompanied Killiam back to the creek, although it was getting dark. Killiam testified he identified the path he and Fleming had traveled by the footprints along the creek. When he reached

the spot where he had originally detained Fleming, another officer jumped down into the creek bed. The officers found a white towel that was clean and dry despite the wet, muddy condition of the creek bed. Approximately three feet from the towel was a gun, which had some sand in it but was otherwise clean and dry. Killiam also found a pocketknife in the footprints where Fleming had stood and a plastic baggie containing a crystal substance—later identified as 6.91 grams of methamphetamine. The baggie and the pocketknife were dry, clean, and found within a foot of each other. None of the items were tested for fingerprints, and no photos were taken at the scene.

Fleming pleaded not guilty to both counts charged: possession of a controlled substance with intent to deliver; and possession, receipt, transportation, or dominion and control over a firearm as a convicted felon, in violation of Iowa Code section 724.26. The jury found Fleming guilty of possession with intent to deliver methamphetamine and not guilty on the firearm charge.[1]

## II. Standard of Review

If, when considering the record in the light most favorable to the State, substantial evidence supports a verdict, the verdict will be upheld. *State v. Showens*, 845 N.W.2d 436, 439–40 (Iowa 2014). Therefore, "[w]e review sufficiency-of-the-evidence claims for correction of errors at law." *Id.* at 439.

---

[1] Fleming was sentenced to serve a term not to exceed forty years with application of a sentencing enhancement because of two prior felonies to which he stipulated. He was ordered to serve a mandatory one-third of the sentence before becoming eligible for parole or work release.

**III. Discussion**

The recent decision in *State v. Thomas* has developed the landscape of sufficiency-of-the-evidence claims in Iowa. ___ N.W.2d ___, 2014 WL 2434595 (Iowa 2014). We use the *Thomas* analysis as we now consider Fleming's appeal.

A jury verdict will be upheld if it is based on substantial evidence. *State v. Musser*, 721 N.W.2d 758, 760 (Iowa 2006). "Evidence is substantial if it could convince a rational jury of the defendant's guilt beyond a reasonable doubt." *Id.* (quoting *State v. Corsi*, 686 N.W.2d 215, 218 (Iowa 2004) (internal quotation marks omitted) We review the entire record and view it in the light most favorable to the jury's verdict. *State v. Petithory*, 702 N.W.2d 854, 856 (Iowa 2005).

The conviction for possession of a controlled substance with intent to deliver required the State prove (1) Fleming knowingly possessed methamphetamine, (2) Fleming knew that the substance he possessed was methamphetamine, and (3) Fleming possessed the substance with the specific intent to deliver it. *See* Iowa Code § 124.401(1)(b)(7). To meet the possession element, the accused must have exercised dominion and control over the substance. *See Thomas*, 2014 WL 2434595, at *4. Additionally, possession may be either actual or constructive. *Id.* at *5. Actual possession encompasses both contraband found on the defendant's person, and where substantial evidence supports a finding the contraband was on his person at one time. *See State v. DeWitt*, 811 N.W.2d 460, 474 (Iowa 2012); *State v. Vance*, 790 N.W.2d

775, 784 (Iowa 2010). Constructive possession is a judicial construct in which "possession of contraband [can] be inferred based on the location of the contraband and other circumstances." *Thomas*, 2014 WL 2434595, at *5 (citing *Vance*, 790 N.W.2d at 784). For example, when drugs are found on premises within the exclusive possession of the accused, this may be enough evidence to sustain the conviction. *Id.* However, when drugs are found on premises not under the exclusive possession of the accused, additional evidence is required to establish possession by the accused. *Id.* Such additional evidence may take the form of "(1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance." *Id.* (quoting *State v. Maxwell*, 743 N.W.2d 185, 194 (Iowa 2008)) (internal quotation marks omitted). These factors are not exclusive and simply provide a guide to the reviewing court. *Id.*

Fleming claims the State did not prove constructive possession given the totality of the evidence and its entirely circumstantial nature. He claims there is no concrete link between himself and the evidence found scattered about the site of his detention. However, with *Thomas* now informing our analysis, we conclude the evidence is sufficient to support the jury verdict.

While it is true Killiam did not see Fleming dispose of any of the items during his pursuit, significant evidence links Fleming to the discarded items. Specifically, the area around Four Mile Creek is private and is not publicly accessible. The only foot tracks near the creek bed were Killiam's and

Fleming's, indicating no one else had been in the area. All of the items were found either on Fleming—the clear plastic baggies and the money—or at the site of his detention—the methamphetamine in a clear plastic baggie and the pocket knife. All of these items were consistent with the methamphetamine trade, and none pointed toward personal use. The amount of methamphetamine recovered was consistent with having the intent to deliver, as was the amount of money found on Fleming at the time of his arrest. Detective Griffiths, called as an expert by the State, testified a gram of methamphetamine had a street value of approximately $130.00, the amount recovered from Fleming's person. The pocketknife found near the methamphetamine in the creek bed is consistent with tools used to break off pieces of methamphetamine for sale. The fact Fleming was arrested with clear, empty plastic baggies on his person is also indicative of possessing the intent to distribute drugs. Finally, the condition of the items recovered indicated recent disposal, not long-term exposure to the elements. Fleming's repeated attempts to escape, while not solely indicative of guilt, also inform our assessment of his behavior.

We recognize our supreme court's *Thomas* decision was not unanimous. 2014 WL 2434595, at *13 (Hecht, J., dissenting). Rather, the evidence in *Thomas* was considered insufficient by three dissenting justices who concluded the evidence of possession pointed equally to Thomas and to the other occupants of the apartment. *Id.* However, when we apply the dissent's view to Fleming's circumstances, we conclude the *Thomas* case is distinguishable because here there are no other potential possessors of the property found at the

detention site.  Considering the totality of the evidence and the timeline of the events, we conclude the evidence of possession and intent to deliver points firmly toward Fleming.

Viewing the record in the light most favorable to the State, as we must, and with deference to the jury's assessment of credibility, we conclude substantial evidence in the record supports the jury verdict.  Accordingly, we affirm.

**AFFIRMED.**