# IN THE COURT OF APPEALS OF IOWA

No. 13-1523
Filed July 30, 2014

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**EDWARD WAYNE BRASSELL,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

     The defendant appeals his conviction for burglary in the second degree. **AFFIRMED.**

     Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, Jean Pettinger, Assistant Attorney General, Stephanie Koltookian, Student Intern, Thomas Ferguson, County Attorney, and James J. Katcher, Assistant County Attorney, for appellee.

     Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Edward Brassell appeals his conviction for burglary in the second degree, in violation of Iowa Code section 713.5 (2013). He challenges the sufficiency of the evidence upon which the conviction rests. Specifically, Brassell contends the State failed to prove he did not have the right, license, or privilege to enter the victim's bedroom.

We review a challenge to the sufficiency of evidence for correction of errors at law. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it." *Id.* at 439-40 (citation omitted). "If a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt, the evidence is substantial." *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). But "[e]vidence that raises only 'suspicion, speculation, or conjecture' is *not* substantial evidence." *Id.* (quoting *State v. Barnes*, 204 N.W.2d 827, 829 (Iowa 1972)). With respect to the element at issue, the State was required to prove Brassell "did not have permission or authority to enter or break into the occupied structure."

Brassell, Peter Yates, and Joseph Middleton went to Middleton's residence after an evening of drinking. Middleton resided in the basement of a house, which he rented from Brittani Larrew. Larrew lived with her daughter on the main level of the house. Because the basement did not have a kitchen or bathroom, Larrew allowed Middleton access to the kitchen and bathroom on the

main level. Middleton had no right or need to access any other part of the main level: the basement was accessible through a separate back door; Middleton and Larrew maintained separate living and sleeping quarters; and the main level was laid out such that there was no need to pass through Larrew's living and sleeping quarters to access the kitchen and bathroom from the basement.

Upon arriving at Middleton's residence, Middleton told Brassell and Yates they were not allowed to go upstairs because Larrew lived there. He specifically instructed them that if they needed to urinate, they were to use a drain on the floor of the basement. Middleton then went upstairs and returned to the basement with some beer. At some point during the night, Brassell and Yates asked Middleton for something to eat. Middleton went upstairs to the kitchen and returned to the basement with sandwiches. The men later asked Middleton for something to drink. Yates testified Middleton was falling asleep and told the men to get it themselves. Middleton denied saying anything of that nature to the men. Regardless, Middleton fell asleep, and Brassell and Yates went upstairs.

Larrew was upstairs sleeping in her bed with her daughter at this time. She awoke to noise in her bedroom and saw Yates standing beside her bed and Brassell in the hallway outside her bedroom. She lay still and pretended to be asleep until the men left the room. When they left, she tried to find her cellular phone but discovered it was missing. She fled the residence with her daughter, went to a neighbor's house, and called the police. By this time, Brassell and Yates discovered Larrew was no longer in the bedroom. Brassell then took a

laptop Yates had removed from the bedroom and hid it outside the house. Both men then returned downstairs to the basement.

When the police arrived, they found Brassell and Yates in the basement. The police called Larrew's cellular phone number, and the phone began to ring. It was on a shelving unit next to Yates. The police went outside and found the laptop Brassell had hidden outside the residence. The men were placed under arrest.

We have no difficulty in concluding substantial evidence supports the verdict. We view the evidence in the light most favorable to the State. *Showens*, 845 N.W.2d at 439-40 (citation omitted). Middleton testified he told Brassell and Yates they did not have permission to go upstairs onto the main level because Larrew lived there. Even crediting Yates' testimony that Middleton said the men could go upstairs and get drinks, that only granted them the right to enter into the kitchen. The men had no authority to leave the kitchen area and enter Larrew's bedroom. *See State v. Peck*, 539 N.W.2d 170, 173 (Iowa 1995) ("[U]nder the general rule, a person who has a general right of entry is guilty of burglary . . . if he exceeds his rights either with respect to the time of entering or the place into which he enters. So, a . . . guest . . . with the right to be in the building or room, may be convicted of burglary on proof that he broke and entered at a time or place beyond his authority . . . ." (citation omitted)). Further, at trial, Yates admitted both men entered Larrew's bedroom without authority to do so.

For the foregoing reasons, the conviction is affirmed.

**AFFIRMED.**