**IN THE COURT OF APPEALS OF IOWA**

No. 17-1373
Filed June 20, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARCO MARTINEZ,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Thomas G.

Reidel, Judge.

Marco Martinez appeals his convictions for third-degree burglary and fourth-

degree theft. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Marco Martinez appeals his convictions for third-degree burglary and fourth-degree theft. He claims the State did not prove beyond a reasonable doubt that he broke into a liquor store after hours. Because the only evidence placing Martinez at the scene was an identification by police officers from a surveillance video that did not show the burglars' faces or any other distinctive features, we find insufficient evidence to sustain his convictions.

## I.    Facts and Prior Proceedings

Shortly after 1:30 a.m. on November 13, 2016, video surveillance captured footage of a large rock smashing through the glass front door of Pearl City Tobacco & Liquor in Muscatine. Two individuals with their faces shrouded by black hoodies raced through the gap into the store that was closed for the night. The pair ducked behind the counter, grabbing items off shelves. They left the store less than a minute after entering. Another camera outside the store showed three individuals moments before the break-in and again as they left the scene. Before their retreat, one of them grabbed a backpack left at the curb.

The break-in triggered an alarm, and the security company contacted police. Officer Minnat Patel responded to the business located just off Grandview Avenue; he found broken glass and the rock used to "force entry" but no suspects. Police called the owner, who tallied $207.92 worth of alcohol and cigarettes missing from the store. The owner also gave Officer Patel video files from store surveillance cameras. Police did not dispatch evidence technicians to the business until more than one week later. As a result of the time lapse, they did not

attempt to collect fingerprints, hairs, or other trace evidence to help identify the burglars.

The crime went unsolved for months. One lead came from Police Detective Todd Koch who remembered seeing three young men riding bicycles along Grandview Avenue, roughly five blocks away from Pearl City Tobacco and about half an hour before the break-in. Koch testified he was driving home after working a ten-hour shift and switched on his patrol car camera after noticing the cyclists because he thought their presence was suspicious at that late hour.[1] Given the distance and darkness, Koch's video did not provide clear enough picture quality to allow a viewer to identify the three people, but Koch nevertheless testified he recognized two of the cyclists as Marco Martinez and D.F., a junvile. The officer testified, "I've seen them multiple times. I know who they are, and they didn't have masks on." Koch acknowledged he was going thirty miles per hour when he saw Martinez and D.F. but he did not stop his car to engage with them.[2] After arriving home sometime after 1:30 a.m., Detective Koch heard about the break-in at Pearl City Tobacco on his police dispatch radio. Koch testified he reached out to several officers, including Patel, to let them know he saw Martinez and D.F. in the area before the burglary. Officer Patel did not testify to receiving a tip from Koch.

On December 11, 2016, Koch and Officer Connor, a school resource officer, spoke with D.F. at his home regarding an unrelated issue. Connor's body camera

---

[1] The prosecutor explained at trial that the dashboard camera video runs on a continual loop and when the officer turns on the video, it preserves several seconds of earlier footage.

[2] The detective acknowledged on cross examination he knew D.F. was a minor and Muscatine has a curfew ordinance, but he chose not to stop because he was "off work." Notably, Koch was not deterred from recording the video of the cyclists and monitoring his police radio when he was off duty.

captured photographs of D.F. Connor did not testify at trial, but Koch offered the jury a comparison of those images of D.F. and the appearance of one of the individuals on the surveillance video from Pearl City Tobacco. Koch testified he could identify D.F. because he was familiar with D.F.'s build and gait. Koch also asserted the clothes worn by D.F. on December 11 were similar to the clothes worn by the individual on November 13. Koch testified he could identify Martinez because the detective was familiar with Martinez's size and gait, and the backpack Martinez carries because of a medical condition. Koch's partner, Officer Anthony Arnaman, also testified he recognized D.F. and Martinez from the Pearl City Tobacco surveillance video based on "their stature, their build" as well as "their gait or their walk." Arnaman testified D.F. and Martinez were "close associates and friends" and he saw them together "on the street pretty much on a normal daily basis" during the work week.

On February 27, 2017, the State charged Martinez with burglary in the third degree in violation of Iowa Code sections 713.1 and 713.6A(1) (2017) and theft in the fourth degree in violation of sections 714.1 and 7.14.2(4). The jury found Martinez guilty on both counts. Martinez appeals.

## II.     Standard of Review

We review a district court ruling denying a motion for judgment of acquittal for errors of law. *State v. Hearn*, 797 N.W.2d 577, 579 (Iowa 2011). A motion for judgment of acquittal challenges the sufficiency of the evidence. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). The jury's verdict is binding on appeal unless there is an absence of substantial evidence in the record to sustain it. *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010). Evidence is sufficient if it could

persuade a rational jury that the defendant was guilty beyond a reasonable doubt. *Id.* "The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002). Generally, we will not resolve conflicts in the record, pass upon the credibility of witnesses, or weigh the evidence. *See State v. Hutchinson,* 721 N.W.2d 776,780 (Iowa 2006) (reserving those assessments for the jury). But a jury's assessment of credibility may be ignored on appeal if the testimony was "so impossible, absurd, and self-contradictory that it may be deemed a nullity." *See State v. Speaks*, 576 N.W.2d 629, 632 (Iowa Ct. App. 1998). We view the record in the light most favorable to the State. *State v. Showens*, 845 N.W.2d 436, 439–440 (Iowa 2014).

## III. Discussion

The jury was instructed to prove burglary in the third degree, the State was required to satisfy the following elements:

1. On November 13th around 1:30 am, Marco Martinez and D.F.:
   a. Broke into Pearl City Tobacco store in Muscatine, Iowa.
   b. After the store closed and without the permission of store owner.
   c. With the intentions to commit a theft.
   d. $207.92 of items were taken from Pearl City Tobacco store.

To prove theft in the fourth degree, the State was required to satisfy the following elements:

1. On November 13th around 1:30 am, Marco Martinez and D.F.:
   a. Took possession or control of property belonging to Pearl City Tobacco and Liquor
   b. With the intent to permanently deprive the owner of the property.

c. The items taken were valued at $207.92 and exceeds threshold of $200.00 for fourth degree theft.

At trial, Martinez contended the State did not present sufficient evidence that he was one of the two individuals who broke into Pearl City Tobacco. The prosecution relied primarily on the testimony of Koch and Arnaman based on their scrutiny of video and photos taken by surveillance cameras at Pearl City Tobacco, the dashboard camera on Koch's patrol car, and Connor's body camera. On appeal, Martinez advances a single issue—whether the State proved beyond a reasonable doubt that he was one of two people who broke into Pearl City Tobacco on November 13 and stole merchandise.

Martinez emphasizes the State did not present an eyewitness, or any fingerprints, hairs, or other trace evidence from the scene of the crime. The videos provided by Pearl City Tobacco and Koch's patrol car do not show the faces of the two individuals nor do they display any unique identifiers such as tattoos or other markings. The clothing worn by the burglars could not be narrowed down from the attire of any young person in Muscatine. In response, the State asserts it met the substantial-evidence standard by offering the testimony of Koch who placed Martinez and D.F. a few blocks from the store roughly thirty minutes before the burglary, as well as testimony from Koch and Arnaman, who identified Martinez and D.F. in the surveillance video based largely on the builds and "gaits" of the young men.

Martinez attacks the reliability of Koch's testimony, pointing out the detective had just finished a ten-hour shift and was driving thirty miles per hour at 1:00 a.m. when he purportedly saw Martinez and D.F. riding bicycles on the

sidewalk. The patrol car video fails to corroborate Koch's testimony that the cyclists could be recognized under those conditions. The individuals appear on the video as silhouettes without distinguishing features and are somewhat blurry because of the patrol car's motion. We share the defense's skepticism about the officer's ability to recognize the individuals with any level of certainty under those conditions. And even if Koch correctly identified Martinez and D.F. riding their bikes along Grandview Avenue, that sighting only put the suspects roughly one-half mile from the store about half an hour in advance of the burglary.

The State's only evidence placing Martinez at the crime scene was the surveillance video as interpreted by the two officers. Given the lack of detail in their descriptions, the officers' after-the-fact observations from the short video clips do not constitute proof beyond a reasonable doubt that Martinez was one of the burglars. *See People v. Ballard*, No. 325731, 2016 WL 4419300, at *4 (Mich. Ct. App. Aug. 18, 2016) (reversing conviction where key evidence linking defendant to robbery was identification by witness not present during robbery and whose identification was based on the robber's limp as depicted in a video). Officers Koch and Arnaman named Martinez and D.F. based largely on their "gaits" from video footage that does not show their faces or any peculiar physical features. Neither officer articulated how the gait of either burglar set them apart from other individuals. While the officers testified they had previous encounters with Martinez and D.F., the evidence did not show they had an especially close relationship with either suspect. *Cf. State v. Carlton*, 2017 WL 3863415 *5 (N.C. Ct. App. Sept. 5, 2017) (rejecting defendant's sufficiency argument where identification was made by defendant's father, who was "very familiar" with him and could explain why he

was "a hundred percent sure" defendant was "the perpetrator in the surveillance video with the money bag and handgun"). Here, the State did not offer any additional evidence suggesting Martinez had a distinctive gait.[3] Indeed, our own review of the minute-long video clip did not reveal anything odd about the way the burglars moved about the store. *See Scott v. Harris*, 550 U.S. 372, 378 n.5 (2007) (allowing the video to "speak for itself" in a civil case involving a vehicle chase).

The State also highlights the fact Martinez is known to carry a backpack due to a medical condition and one of the burglars picked up a backpack from the curb before fleeing. We are not convinced that such a coincidence amounts to proof beyond a reasonable doubt of the suspect's identity. Backpacks are common items. The dark-colored bag in the video clip did not bear any distinguishing marks and could have been brought to the scene by anyone to hold the items stolen from the Pearl City Tobacco store.

The State did present evidence from the officers' December 11 encounter with D.F. to show his build[4] was similar to one of the individuals who burglarized the store. But even if D.F.'s build matched one of the burglars, the State offered no proof Martinez was with D.F. that night. Officer Arnaman's belief they were "close associates" did not establish Martinez's presence by proof beyond a reasonable doubt.

---

[3] Martinez's mother testified for the defense and denied her son's medical condition affected how he walked.

[4] Koch also mentioned D.F. wearing similar shoes on December 11 as one of the burglars in the video. But during the defense cross examination, Koch admitted the two pairs of shoes appeared to have different color soles.

We consider the evidence in the light most favorable to the State. *Showens*, 845 N.W.2d at 439-440. Even so, substantial evidence does not support the conclusion that Martinez participated in the burglary or theft. The identification testimony—stemming from officers watching short video clips—created no more than speculation or suspicion. Our view is not that Koch or Arnaman were untruthful in their identification of Martinez but rather the snippets from the surveillance video did not offer enough visual cues for either officer to make a reliable identification of an individual they knew only in passing. The district court erred in not granting Martinez's motion after the State's case in chief. *See* Iowa R.Crim. P. 2.19(8)(a) (stating the court "shall order the entry of judgment of acquittal" after the evidence on either side is closed "if the evidence is insufficient to sustain a conviction"). We reverse and remand for entry of judgment of acquittal.

**REVERSED AND REMANDED.**