STATE of Iowa, Appellee,

v.

**Robert Wayne ODEM, Appellant.**

**No. 67135.**

Supreme Court of Iowa.

July 21, 1982.

Herman P. Folkers, Mason City, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., Robert J. Blink, Asst. Atty. Gen., and G. A. Cady, III, Franklin County Atty., for appellee.

SCHULTZ, Justice.

Following a jury trial, defendant, Robert Wayne Odem, appeals from his convictions on two counts of murder in the first degree in violation of sections 707.1 and 707.2, The Code. Defendant claims that the trial court erred in permitting the State to impeach him on collateral matters and in overruling his objection to an improper closing argument by the prosecutor. We find no merit in either of the defendant's assignments of error and affirm his conviction.

William (Bill) Robert Smith and Kimberly Smith, husband and wife, were found shot to death in the bedroom of their Latimer, Iowa, home on the morning of December 27, 1980. Bill Smith's two sons from a prior marriage, Chad and Steve, were staying at the Smith residence on the night of December 26, 1980, where they slept on a make-shift bed on the living room floor. The boys testified that they watched a popular television show which ended at 9:00 p. m. and went to sleep when the program was over. Both boys saw a man enter the Smith home during the night and testified that he wore a red coat, blue jeans, and dirty, brown work boots. They heard voices and also heard gun shots from the Smith's bedroom.

On the morning of December 27, the boys went to a neighbor's home and told her that someone had shot Bill and Kimberly. A deputy sheriff was called and came to investigate the crime.

The Iowa Department of Criminal Investigation (DCI) processed the crime scene. The officers found both bodies on the floor of the bedroom. Each of the victims suffered two gunshot wounds. Remington shell casings were found near the bodies. No evidence was found connecting the defendant with the scene of the crime.

At the request of DCI agents, defendant on January 8, 1981, voluntarily turned over a .22 caliber Winchester rifle to them. The weapon was owned by defendant's brother but had been in the defendant's possession since August, 1979. Firearms testing conducted by the DCI revealed that the gun was the murder weapon.

On February 19, 1981, defendant was taken to the Franklin County Courthouse by DCI agents and questioned concerning his activities during the evening in question. Odem detailed his activities during the afternoon of December 26 and his visits to various bars in Hampton, Iowa, that evening. He then claimed that after he left a bar at about 2:15 a. m., he drove around town, traveled to a friend's house, and went home to bed at about 2:45 a. m. Defendant testified substantially to these facts at trial, which were corroborated by other witnesses who testified for the State.

Defendant testified that he used the rifle for hunting and kept it in the back of his car which was seldom locked. The gun was in his car from late November until the last week of December, 1980, when he took it into the house. At that time he indicated he wiped the gun with cleaning oil and hung it on the wall. He testified that the last time he used the gun was in November, 1980, for coon hunting.

Defendant became acquainted with Bill Smith in 1976 or 1977. However, he indicated he had no contact with Smith from this period until December, 1980, when he visited his brother-in-law at the hospital in Hampton. Bill and Kimberly Smith were also visiting the brother-in-law at that time. Although defendant denied her testimony, defendant's sister testified that defendant had called Bill Smith a "lazy bastard" and stated that if he ever saw Bill on his property he would shoot or kill Bill. On December 22, defendant, with his brother-in-law, went to the Smith's home in an attempt to sell defendant's used automobile to the Smiths. Defendant claims that this was his last contact with the Smiths.

Evidence was also produced at trial that defendant was wearing clothes similar to that described by the Smith boys on the night of the murders. It was further shown that defendant had purchased Remington ammunition several months prior to the shootings and was an expert marksman.

I. *Impeachment on Collateral Matters.* Defendant raised objections to certain testimony of two of the State's rebuttal witnesses. In each instance the court overruled defendant's objection and permitted the testimony. The first witness, a go-go dancer, testified as to her route on leaving a bar after her performance. The second witness, a manager of a Holiday Station, testified that the Station's records did not show the purchase of ammunition by the defendant in November of 1980. Defendant raised timely objections and claimed the trial court erred in permitting the State to impeach the defendant's credibility on collateral issues first raised on cross-examination.

It is proper for a party to contradict and discredit an adverse witness by showing the facts to be other than as testified to by such witness. *State v. Wycoff,* 255 N.W.2d 116, 118 (Iowa 1977). "It is well settled, however, the right to impeach by prior inconsistent statements is not without limit. The subject of the inconsistent statement, if it is to be admissible, must be material and not collateral to the facts of the case." *State v. Fowler,* 248 N.W.2d 511, 520 (Iowa 1976) (quoting *State v. Hill,* 243 N.W.2d 567, 570 (Iowa 1974)); *State v. Murray,* 238 Iowa 861, 865, 28 N.W.2d 498, 500 (1947). The answer on cross-examination is thus conclusive and the cross-examiner must take the answer. *State v. Johnson,* 223 N.W.2d 226, 228 (Iowa 1974); C. McCormick, *Handbook of the Law of Evidence* § 47, at 98 (2d ed. E. Cleary 1972).

A. *Go-go dancer.* The defendant on direct examination testified that when he was drinking in the Viking Lounge in Hampton, he observed a go-go dancer perform. After she finished her last performance, the defendant attempted to buy her a drink, which she refused. When the dancer left the bar shortly thereafter, the defendant followed her out of the bar. On cross-examination by the prosecutor, the defendant testified that the dancer walked across Highway 3 to a motel parking lot. Later during the trial, the dancer testified as a State rebuttal witness, over defendant's objection, that she did not cross Highway 3 but only walked to the tavern parking lot for her car.

The defendant claims that the rebuttal testimony of the go-go dancer denying the crossing of the street had no purpose independent of contradicting defendant's statement on cross-examination and thus was inadmissible impeachment of defendant's credibility on a collateral matter. The State claims, however, that the movement of the go-go dancer was not a collateral fact and thus was properly admitted. The issue between the parties thus turns on whether the dancer's rebuttal testimony was directed at a collateral fact.

■ We have indicated that impeachment evidence is not collateral if it could have been admitted for any purpose independent of the contradiction. *State v. Hilleshiem*, 305 N.W.2d 710, 713 (Iowa 1981). Further, we recognize that it is permissible to contradict any part of a "witness's account of the background and circumstances of a material transaction, which as a matter of human experience [the witness] would not have been mistaken about if [the witness's] story were true." C. McCormick, *supra*, at 99 (footnote omitted). Defendant indicated that he left the Viking Lounge at about 1:45 a. m. and drove around town and then to a friend's house. He pulled into the friend's yard and parked for some time before driving to his home at about 2:45 a. m. The friend verified that a car was in his driveway momentarily at about 2:30 a. m. Because the jury was clearly informed of the travel time involved between the Viking Lounge, the Smith's residence, and the friend's house, the defendant's departure time from the Viking Lounge is crucial in establishing the defendant's whereabouts during the time of the murders. If the defendant did in fact follow the go-go dancer out of the Viking Lounge at the time in question, he should have known whether or not she crossed the highway. If, on the other hand, the defendant did not follow the dancer out of the lounge, but in fact left the lounge at a different time, he would not have known whether the dancer crossed Highway 3. While it is true that whether the dancer crossed the street would normally be a collateral issue, the defendant's recollection of the event is relevant in establishing his whereabouts during the time of the murder. The dancer's rebuttal testimony was thus germane to the issue and the trial court did not err in admitting her testimony.

B. *Ammunition.* During the cross-examination of the defendant, it was brought out that he had last bought ammunition at the Holiday Station in Clarion, Iowa in November, 1980. Over defendant's objection, the State was allowed to call a rebuttal witness, the Holiday Station's manager, to testify that the Station kept records of the ammunition sales and that those records did not indicate that Robert Odem purchased ammunition in November of 1980. The manager also testified that the Station sold only Federal ammunition and did not carry Remington ammunition, the type that was used in the killing of the Smiths.

Defendant claims that whether or not he purchased Federal ammunition at the Holiday Station had nothing whatsoever to do with the deaths of the Smiths who were killed with Remington ammunition. The defense claims that proper objection to the collateral impeachment evidence was made, and that the prosecutor took full advantage of this impeachment evidence before the jury in final arguments by repeatedly referring to the defendant as a liar.

The State claims, however, that the alleged purchase of ammunition tended to

show the defendant's consciousness of guilt. The State further claims that because Odem knew the type of ammunition used to kill the Smiths, it was proper for the prosecutor to argue that the defendant lied about purchasing the ammunition at the Station to mislead the investigators. According to the State, such an intentional untruth is an indication of consciousness of guilt.

 It is basic that a party may place into evidence the admissions made by a party-opponent. *See State v. Williams*, 256 N.W.2d 207, 208 (Iowa 1977); *Vine Street Corp. v. City of Council Bluffs*, 220 N.W.2d 860, 863 (Iowa 1974). An admission may be implied by conduct subsequent to a crime, including fabrication, when such conduct indicates a consciousness of `guilt. C. McCormick, *supra*, § 273, at 660; 1 *Wharton's Criminal Evidence* § 218 (13th ed. C. Torcia 1972). *See* 2 J. Wigmore, *Evidence* § 278 (J. Chadbourn rev. 1979). A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt. *State v. Ladehoff*, 255 Iowa 659, 670, 122 N.W.2d 829, 836 (1963); *State v. Tornquist*, 254 Iowa 1135, 1144–45, 120 N.W.2d 483, 489 (1963); *State v. Feltes*, 51 Iowa 495, 499, 1 N.W. 755, 759 (1879). *See also State v. Schrier*, 300 N.W.2d 305, 309 (Iowa 1981) (inconsistent statements of a defendant of material facts are probative circumstantial evidence from which a jury may infer guilt). The false story is relevant to show that a defendant fabricated evidence to aid his defense. *State v. Loftis*, 89 Ariz. 403, 407, 363 P.2d 585, 588 (1961). In the absence of abuse of discretion it is for the trial court to decide if the probative value of such evidence is outweighed by its prejudicial effects. C. McCormick, *supra*, at 661.

 Defendant's statement to the DCI agent that he last purchased ammunition at the Holiday Station, if untrue, was relevant to show that the defendant deliberately fabricated facts to mislead the DCI in its investigation against him. The evidence is without dispute that the Holiday Station only sold Federal ammunition and that the victims were killed by Remington ammunition. A fabrication that would lead agents away from the defendant is admissible evidence against the defendant independent of the cross-examination. The trial court did not err in its ruling.

II. *Improper argument.* Defendant claims that the prosecutor was guilty of misconduct because of allegedly improper remarks during closing argument. Without an independent eye-witness, the prosecutor drew inferences from the circumstantial evidence and reconstructed the crime scene and what took place at that time. Defendant claimed that there was nothing in the record to sustain such statements, and the trial court overruled his objections.

 The standard governing the scope of closing arguments was stated in *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975):

Counsel is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial. He may draw conclusions and argue all permissible inferences which may reasonably flow from the record which do not misstate the facts.

Of course, counsel has no right to create evidence by his argument nor interject his personal beliefs. It is for the jury to determine the logic and weight of the conclusions drawn.

(citations omitted). Applying the *Phillips* standard, we find, as did the trial court, that the prosecutor's inferences were properly premised on circumstantial evidence and were within the range of legitimate and appropriate comment. Suffice it to say that our examination of the argument and the objections reveals that the prosecutor argued the case with vigor and imagination. To set the arguments out in detail would unduly lengthen the opinion and serve no useful purpose. We find no error.

AFFIRMED.