# IN THE COURT OF APPEALS OF IOWA

No. 14-1097
Filed July 22, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DARRELL A. SHOWENS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark R. Fowler, District Associate Judge.

        Darrell Showens appeals his conviction on one count of failure to comply with sex offender registry requirements.  **REVERSED AND REMANDED.**

        Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, and Austin Muow, Student Legal Intern, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick (until withdrawal) and Kevin Cmelik, Assistant Attorneys General, Michael J. Walton, County Attorney, and Alan Havercamp and Robert Bradfield, Assistant County Attorneys, for appellee.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Darrell Showens appeals his conviction on one count of failure to comply with sex offender registry requirements by "loitering" in an exclusion zone in violation of Iowa Code section 692A.111(1) (2011).[1]

### I. Factual and Procedural Background

As a result of a prior conviction in 1999, Showens was required to register as a sex offender pursuant to Iowa Code section 692A.103. He was therefore prohibited from "[l]oiter[ing] within three hundred feet of the real property boundary of a public library" pursuant to Iowa Code section 692A.113(1)(g). As defined by Iowa Code section 692A.101(17):

> "Loiter" means remaining in a place or circulating around a place under circumstances that would warrant a reasonable person to believe that the purpose or effect of the behavior is to enable a sex offender to become familiar with a location where a potential victim may be found, or to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim.

On May 11, 2012, a Scott County Sheriff detective whose primary job is to register sex offenders and monitor compliance with registry requirements saw Showens sitting on a bench across the street from and facing the entrance of the Davenport Public Library. The detective recognized Showens and moved to a location to covertly observe him while confirming his sex-offender status. The detective watched Showens for approximately ten minutes, during which time he observed Showens eating a bag of chips, drinking a sports drink, and "watch[ing] people walk on the same side of the street as [Showens] as well as the opposite side of the street going into the library."

---

[1] Section 692A.111(1) provides, "A sex offender who violates any requirements of section . . . 692A.113 . . . commits an aggravated misdemeanor for a first offense . . . ."

The detective approached Showens and asked why he was sitting on a bench across from the library. Showens stated he was waiting for a friend. The detective replied he would wait for the friend with Showens. Showens modified his initial answer; he *had* been waiting for a friend, but the friend had already arrived and recently departed. The detective explained he had observed Showens for ten minutes but had not seen the friend. Showens replied the friend had departed approximately twenty minutes ago. The detective inquired what Showens had been doing in the twenty minutes since the friend's departure. Showens said he had been scratching off lottery tickets. The detective asked to see the tickets. Showens said they were all losing tickets and he had already disposed of them. The detective pressed Showens on his reason for continuing to sit across from the library after throwing away the lottery tickets. Showens then stated he was waiting for the bus. The detective noted the bench was not near a bus stop. Showens explained he was going to finish his snack, then walk two blocks to the nearest bus stop to catch the bus home. However, Showens lived only five blocks from the bus stop. Showens characterized his act of sitting on the bench as "just hanging out" and stated he believed he had been sitting on the bench for a total of around forty-five minutes.

The detective arrested Showens for violating Iowa Code section 692A.113(1)(g). Showens was charged by trial information on June 13, 2012. He waived a jury trial. Following a bench trial, where the detective and Showens were the only two witnesses, the court convicted Showens, ruling that a reasonable person would believe Showens's purpose was either to become familiar with a location where a potential victim could be found or to locate a

potential victim. Showens appealed, asserting there was insufficient evidence to support the conviction and claiming the statutory definition of "loitering" was unconstitutionally vague.

On that appeal—Showens's first—our supreme court interpreted the statutory definition of "loitering." *State v. Showens*, 845 N.W.2d 436, 445 (Iowa 2014). It held, "[W]e interpret the phrase 'to enable a sex offender to become familiar with a location where a potential victim may be found' as requiring a determination that familiarity was tied to the potential presence of victims." *Id.* Its interpretation ensured the statute was not unconstitutionally vague. *Id.* It then found "the district court did not have the benefit of our construction of the statute" when it convicted Showens. *Id.* at 449. Our supreme court was therefore "unsure whether [the district court] applied the appropriate legal standard." *Id.* It declined to pass upon the sufficiency of the evidence[2] and instead remanded the case for new findings, conclusions, and judgment on the existing record. *Id.* at 450. On remand, the district court again convicted Showens by utilizing the newly-clarified interpretation of the statutory definition of loitering. In its second ruling, the district court found Showens was at the bench "for the purpose of finding a new victim or because he spotted a potential victim and was waiting for his opportunity to approach said potential victim." Showens now appeals again, reasserting his claim there is insufficient evidence to support his conviction.

---

[2] In discussing the state of the record, our supreme court noted, "[S]ubstantial evidence *could* support a finding that Showens had violated section 692A.113(1)(*g*)." *Showens*, 814 N.W.2d at 449. At the same time, it noted, "Some of the evidence here could potentially be viewed as supporting Showens's innocence." *Id.* at 450. In remanding the case, the court concluded, "In any event, we are not the trier of fact." *Id.*

## II. Standard of Review

"Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will uphold a conviction if there is substantial evidence in the record to support it. *Id.*; *see State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Evidence is substantial if it can convince a rational fact-finder of the defendant's guilt beyond a reasonable doubt. *See State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). We consider all the record evidence—including both the inculpatory and exculpatory evidence— but we consider that evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002).

## III. Discussion

Our supreme court reversed and remanded the district court's first ruling, filed in 2012, for two reasons. First, it was not clear on which alternative of the statutory term "loiter" the ruling relied.[3] The district court had found, "[T]here is substantial evidence in the record that would warrant a reasonable person to believe that Mr. Showens was seated in front of the Davenport library in order to become familiar with a location where a potential victim could be found, *or* to locate a potential victim." (Emphasis added.) Second, if the district court relied upon the first alternative it mentioned, our supreme court was not confident the

---

[3] The statutory language can be parsed to comprise five discrete alternatives: circumstances warranting a reasonable person to believe the purpose or effect of the sex offender's behavior is to enable him or her to (1) become familiar with a location where a potential victim may be found; (2) satisfy an unlawful sexual desire; (3) locate a potential victim; (4) lure a potential victim; or (5) harass a potential victim. *See* Iowa Code § 692A.101(17).

district court's findings were sufficient to satisfy the legal standard it announced in its opinion. *See Showens*, 845 N.W.2d at 449.

The district court's second ruling, filed in 2014, is the one before us now on appeal. In it, the district court endeavored to eliminate our supreme court's misgivings about its 2012 ruling. The district court attempted to issue findings to match our supreme court's language. Our supreme court's interpretation of the statutory language requires that, "[f]rom the perspective of a reasonable person, it would have to appear that Showens's purpose was to scout for potential victims or to scout the library because it offered potential victims."[4] *Id.* at 450. The district court issued a specific finding: "Showens was at that park bench for the purpose of finding a new victim or because he spotted a potential victim and was waiting for his opportunity to approach said potential victim."[5]

Showens asserts on appeal section 692A.101(17) is not satisfied because the State failed to "establish a nexus between Showens sitting on the bench and the circumstances under which a reasonable person would believe his purpose was to find a victim." We agree.

The only direct evidence of Showen's purpose for sitting on the bench was Showen's various explanations to the officer. The district court's findings of fact

---

[4] This standard applies specifically to the first statutory alternative form of "loiter": becoming familiar with a location where a potential victim may be found. *See* Iowa Code § 692A.101(17).

[5] We note one of the misgivings with the district court's first ruling addressed by our supreme court remains in the second ruling: there is again some ambiguity as to which statutory alternative of "loiter" the district court relies upon. Its conclusion could indicate Showens was loitering because he was attempting to become familiar with a location where a potential victim may be found, locate the potential victim he had "spotted," or harass that potential victim. Our review of the record indicates none of these three alternatives is supported by substantial evidence, so the ambiguity need not be resolved on remand as was the case with the district court's 2012 ruling.

relied heavily on inferences it made based on Showens's status as a sex offender rather than direct evidence. The district court particularly relied upon adverse credibility findings drawn from Showens's multiple shifting explanations for his presence on the bench. The district court found Showens's explanations to the detective—which aligned with his testimony at trial—"to not be credible and highly suspect."[6] The explanations were so inconsistent the district court inferred from them an indication of Showens's guilt. *See State v. Blair*, 347 N.W.2d 416, 422 (Iowa 1984) ("We have said that a defendant's inconsistent statements are probative circumstantial evidence from which the [fact-finder] may infer guilt."); *State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt.").

The district court found, "Because of Mr. Showen[s's] actions, responses to the [detective's] questions, his testimony, and false rationales[,] the Court concludes that Mr. Showens had a sinister purpose for sitting [on the bench]."[7] However, our supreme court explained a finding that Showens had a predatory intent is not sufficient to support a conviction if such a finding is not based on the objective circumstances surrounding his presence on the bench. *Showens*, 845 N.W.2d at 449. The district court erred in ruling not on the basis of objective circumstances, but on the basis of its own inference of Showens's intent.

---

[6] Our supreme court also noted, "[Showens's] explanations for waiting there were inconsistent and made little sense." *Showens*, 845 N.W.2d at 449.
[7] The district court's finding notably failed to utilize the reasonable-person standard set forth in the statute. *See* Iowa Code § 692A.101(17).

We consider all reasonable inferences to be fairly drawn from the record in favor of the State. *Keopasaeuth*, 645 N.W.2d at 640. But even if we accept the district court's inference that Showens's purpose for sitting on the bench was "sinister," the inference is insufficient to support his conviction.

> Inferences drawn from the evidence must raise a fair inference of guilt on each essential element, including the element of intent. Inferences that do no more than create speculation, suspicion, or conjecture do not create a fair inference of guilt. Under these standards, when two reasonable inferences can be drawn from a piece of evidence, . . . such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt. In such a situation, a jury would necessarily be required to rely upon conjecture to reach a verdict of guilt. Some other evidence of guilt is required to support a conviction.

*State v. Truesdell*, 679 N.W.2d 611, 618–19 (Iowa 2004) (citations and internal quotation marks removed).

In this case, more than one reasonable inference can be drawn from Showens's explanations of his presence on the bench. Even accepting the inference of some sinister purpose, a fact finder could go on to infer a number of sinister purposes not limited to "scouting" for victims. There is no evidence of the presence of any potential victims in the vicinity of the library. The only evidence in the record showing any people other than Showens and the officer were present is the officer's observation that Showens was "watch[ing] people walk" on either side of the street. The State presented no evidence of the age or gender of the people Showens was allegedly watching, so there is no evidence on which to base an inference that these people were potential victims.

As our supreme court noted, "Showens was found outside the public library around 1:30 p.m. on a school day—not the time when large numbers of

school-age children would normally be present." *Showens*, 845 N.W.2d at 450. The district court, however, speculated, "It is possible that there were home school kids or kids under the school age at the library." We find nothing in the record, and mostly notably nothing in the detective's testimony, to support this conjecture. The district court's speculation does not support an inference that potential victims were present at the time and place of Showens's arrest.

In *State v. Clawson*, No. 10-1581, 2011 WL 3481003, at *1–2 (Iowa Ct. App. Aug. 10, 2011), this court considered a case in which a sex offender was found sitting in a parked truck in front of a daycare facility at a time when children were present. He, like Showens, gave inconsistent statements as to his purpose for parking in front of the daycare facility. *Clawson*, 2011 WL 3481003, at *1. This court found substantial evidence to support his conviction because a fair inference could be made based on the setting of the defendant's alleged loitering. *Id.* at *2. In that case, we had the benefit of a factual record showing the defendant, who had been convicted of sexual exploitation of a minor, positioning himself without credible explanation in a setting where minors were present. *Id.* at *1. We have no such record before us now.

It is possible minors were present at the library while Showens was sitting on the bench. It is also possible no minors were present. There is no record evidence from which a fact-finder can make a fair inference on this factual issue, leaving it "to rely upon conjecture to reach a verdict of guilt." *Truesdell*, 679 N.W.2d at 619. The record before us supports an inference that Showens was buying or selling illegal drugs with equal strength as an inference that he was scouting the library for victims. Some other evidence is required to raise a fair

inference that Showens's purpose was to scout for victims as opposed to another "sinister purpose." *See id.*

The criminal charge in this case relies upon an objective reasonable-person standard.[8] *See* Iowa Code § 692A.101(17). Our supreme court explained the import of this standard as applied to this case:

> Showens cannot be found guilty merely because a fact finder concludes beyond a reasonable doubt he has the intent to be a predator, regardless of what the objective circumstances may indicate about his reasons for being outside the library. On the other hand, if the objective circumstances indicate to a fact finder beyond a reasonable doubt that his purpose is predatory, a claim that he did not have such intent will not save him.

*Showens*, 845 N.W.2d at 449. The district court concluded, "Showens was at the park bench for the purpose of finding a new victim or because he spotted a potential victim and was waiting for his opportunity to approach said potential victim." This conclusion is, based on the record before us, the product of speculation, reached without regard to the objective circumstances of Showens's presence on the bench. Even if the district court as the finder of fact concluded Showens's purpose was to scout for victims beyond a reasonable doubt, the conclusion fails to satisfy the objective reasonable-person standard. The district court's findings are therefore insufficient to support Showens's guilt.

---

[8] We note, as our supreme court noted in Showens's first appeal, the use of a reasonable-person standard in criminal offenses is proper under Iowa law. *See* Showens, 845 N.W.2d at 446–47. *Compare State v. Soboroff*, 798 N.W.2d 1, 8–9 (Iowa 2011) (holding a defendant's online statements are subject to a factual determination as to whether a reasonable person would view the statements as "true threats"), *with Elonis v. United States*, 135 S.Ct. 2001, 2011–12 (2015) (holding in the context of federal criminal law a defendant's online statements must be evaluated in light of the defendant's mental state, not in the light of a reasonable person's interpretation of potentially threatening language).

**IV. Conclusion**

Without regard to whether the district court's suspicion of Showens's sinister purpose is fairly inferred from the record, it is insufficient to create a fair inference of guilt as to the contested essential element of the crime—that "[f]rom the perspective of a reasonable person, it would have to appear that Showens's purpose was to scout for potential victims or to scout the library because it offered potential victims." *Id.* at 450.

Showens's improbable explanations and testimony could support multiple reasonable inferences as to his purpose in sitting on the bench. A conclusion that he was scouting for victims necessarily relies on conjecture rather than objective circumstances, and therefore his conviction is not supported by substantial evidence. We reverse Showens's conviction and remand for entry of judgment of acquittal.

**REVERSED AND REMANDED.**