# IN THE COURT OF APPEALS OF IOWA

No. 22-0299
Filed December 6, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KRISTOFER ALLAN ERLBACHER,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Harrison County, Greg W. Steensland, Judge.


        A criminal defendant appeals his conviction for first-degree murder. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


        Heard by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

"Only a coward brings a Chevy to a fistfight."  This observation by Caleb Solberg's family at sentencing captures how Kristofer Erlbacher murdered him. Following low-grade altercations at a bar, Erlbacher smirked and said "I got this." He then got in his truck, struck another vehicle, accelerated, drove into Solberg, circled around and collided with Solberg again, and then came around a third time to crush Solberg's body.  On appeal, Erlbacher contends the State's evidence at trial was insufficient based on his alleged justification and intoxication.  We affirm.

### I.      Background Facts and Proceedings

On the night of the homicide, Erlbacher and Solberg first ran into each other at a bar in Moorhead.  The two men were getting on each other's nerves, "poking" at each for about an hour.  Eventually, Erlbacher squirted mayonnaise out of a packet onto Solberg.  Solberg punched Erlbacher and threw him out of the bar.

Erlbacher and his friend Shaun Johnson then drove Erlbacher's Chevy 1500 truck to a bar in Pisgah.  Erlbacher called Solberg's brother, Craig Pryor, and threatened to "go to [Solberg's] house" at night "and light it on fire and wait for him to come outside" with a shotgun ready.  Pryor, who didn't take Erlbacher's threats seriously at first, told him they would talk about things when Pryor got to Pisgah.

Erlbacher complained to patrons and bar staff about what happened in Moorhead.  One of the patrons asked Erlbacher if Pryor was "gonna beat [Erlbacher's] ass." Once Pryor arrived at the bar, Johnson mused that Erlbacher was "in deep shit."

Solberg showed up a bit later.  He had words with Johnson outside the bar. Their verbal disagreement devolved into a fistfight that lasted a few minutes.

According to Pryor, who was watching from his truck, the fight ended with the two "hollering" at each other but no serious injuries. "Just a bar fight in Harrison County. They happen every weekend."

Despite bar staff urging him to stay in the bar, Erlbacher went outside after commenting that he was "going to take [his] ass beating." Erlbacher watched the fight between Solberg and Johnson. He then smirked and announced, "I got this," before calmly walking to his truck.

Erlbacher got to his truck, started it, and drove out of the parking lot. Then he did a U-turn and came back around to the bar. There is conflicting evidence as to whether Pryor then backed his truck out of the parking spot into Erlbacher's path. But regardless of what Pryor did, witnesses testified Erlbacher "punched the gas and rammed" his truck into Pryor's. Pryor stepped out of his truck to survey the damage. Then Erlbacher came around and "T-boned" Pryor's truck again before driving off. According to Erlbacher's friend Johnson, this wasn't an accident: Erlbacher "was aiming at [Pryor's] vehicle."

A bystander yelled "he's coming back" as Erlbacher again started driving down the street "at a high rate of speed." Pryor "stomped [the] gas pedal" in his own truck to get out of the way and drove off. Erlbacher was "tearing around out in the street and flying around."

During this chaos, Solberg was standing in the roadway. Multiple witnesses watched as Erlbacher swerved toward Solberg and "floored it," striking him "dead-on front" with the truck. After hitting Solberg the first time, Erlbacher "continued down the street and turned around and came back and hit him again." Solberg survived the first hit and screamed for help before the second impact. The

momentum of the second collision knocked Solberg's body partway under a parked SUV, where "lots of blood" pooled around his head.

One of the witnesses ran back into the bar immediately after and yelled, "Get off the fucking street! He just fucking ran Caleb over! . . . Oh my God, he's running him over multiple times!" Another remarked, "He killed him."

While the bartender called 911, witnesses saw Erlbacher drive "erratically" back and forth in front of the bar. He then drove onto Solberg's unmoving body, paused on top of it for six seconds, reversed and parked. After parking, Erlbacher yelled at the bystanders, asking "where the fuck" Pryor's truck went and announcing that he was "going to get [Pryor] and come back." He asked Johnson to come with him and declared: "[Solberg] ain't talking shit no more." Johnson told Erlbacher that he "killed someone" and declined to leave. Erlbacher replied, "Well, fuck you then," and sped off.

After fleeing the scene, Erlbacher called Pryor to "laugh" and taunt him. Pryor asked Erlbacher if he "killed" Solberg and Erlbacher said "yeah." Erlbacher also told Pryor that he "wouldn't have to worry about [Solberg']s mouth anymore," and said that he would have "got" Pryor too "but he kind of likes [Pryor's] kids."

After colliding with multiple vehicles and Solberg, Erlbacher's truck was "pretty beat up" and leaking transmission fluid. The truck broke down just outside town, and Erlbacher called his father to pick him up. Forensic testing later found Solberg's blood dripping off Erlbacher's truck into the snow.

Erlbacher's father took him back to the bar area, where police questioned him. Erlbacher described the incident at the first bar. But he denied hitting Pryor's

truck or "run[ning] anybody over." Erlbacher also said Solberg threatened to kill him and he was afraid.

A responding deputy observed Erlbacher was "mentally there" and appropriately oriented to time, space, and where and what he was doing. Although Erlbacher's breath smelled of alcohol, the deputy found he was able to explain "kind of what happened" in a "coherent" and "pretty linear story." Breath and blood-alcohol tests showed Erlbacher was well over the legal limit to drive, and he failed field sobriety tests administered by a state trooper. But the bartender in Pisgah said she served Erlbacher "two or three" beers that night, and she opined Erlbacher did not appear "drunk" to her.

The state medical examiner performed an autopsy of Solberg. The examiner concluded Solberg's numerous fractures and other injuries were consistent with being struck multiple times, dragged, and crushed by a motor vehicle. The cause of Solberg's death was blunt-force injuries, and the manner of death was ruled homicide.

After a bench trial, the district court found Erlbacher guilty of murder in the first degree. He appeals.

## II. Standard of Review

"We review sufficiency-of-evidence claims for correction of errors at law." *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022). "[W]e are highly deferential to the [factfinder]'s verdict. The [factfinder]'s verdict binds this court if the verdict is supported by substantial evidence." *Id.* (quoting *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021)). "In determining whether the [factfinder]'s verdict is supported by substantial evidence, we view the evidence in the light most

favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'"  *Jones*, 967 N.W.2d at 339 (quoting *State v. Tipton*, 987 N.W.2d 653, 692 (Iowa 2017)).

### III.  Discussion

Erlbacher makes two challenges to the sufficiency of the evidence, centered on his justification and intoxication claims.  We address each separately.

### A.  Justification

Erlbacher first contends the State did not prove he acted without justification when he killed Solberg.  The State argues Erlbacher waived this argument because he conceded justification was not a complete defense at trial.  And in post-trial motions, Erlbacher said his arguments "kind of fit as a justification, it kind of fit as recklessness, and it kind of fit as voluntary intoxication."  As the district court put it when rendering verdict,

> Defendant does not argue that intoxication and justification should act as a complete defense in this case.  Instead, Defendant argues that he is guilty of a crime involving recklessness, not an intentional killing. . . .  The fact that lesser offenses fit his conduct serves as no defense to the crime charged.

The State, relying on an unpublished decision from our court, urges Erlbacher argued an "imperfect defense" and waived the claim on appeal.  *See State v. Gomez-Rodriguez*, No. 06-0527, 2007 WL 1688987, at *2–3 (Iowa Ct. App. June 13, 2007) (recognizing Iowa law does not countenance "the doctrine of imperfect self-defense" because "the doctrine . . . plainly conflicts with Iowa statutory law"); *see also State v. Cusic*, No. 16-0323, 2017 WL 1278293, at *3 (Iowa Ct. App. Apr. 5, 2017); *State v. Irving*, No. 14-1479, 2015 WL 5965171, at *6–7 (Iowa Ct. App. Oct. 14, 2015).  While we think the State is correct that Iowa

law does not recognize an "imperfect justification" defense, we elect to resolve this question on the merits given the bench-trial record before us.

The General Assembly authorized the use of "reasonable force" in defense of self or others "when the person reasonably believes that such force is necessary to defend oneself . . . from any actual or imminent use of unlawful force." Iowa Code § 704.3 (2020). "Reasonable force" is

> that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

*Id.* § 704.1(1). The statute also provides, "A person may be wrong in the estimation of the danger or the force necessary to repel the danger as long as there is a reasonable basis for the belief of the person and the person acts reasonably in the response to that belief." *Id.* § 704.1(2).

When the use of force is justified by statute, it is a complete defense to criminal conviction. *See State v. Ellison*, 985 N.W.2d 473, 477 (Iowa 2023). If a criminal defendant provides notice and presents sufficient evidence to support justification, the State then bears the burden to disprove justification beyond a reasonable doubt. *Id.* at 478. The State can meet this burden in several ways. As relevant here, the defense is unavailable "when the person knows that he can avoid the need to use it with complete safety by retreating or taking an alternate course." *Id.* at 477. We assume without deciding that Erlbacher generated a fact question on his justification defense and examine whether the State proved the homicide was not justified.

Although Erlbacher told police he was in fear when he killed Solberg, the district court rejected Erlbacher's version of events, finding "beyond a reasonable doubt that Erlbacher acted without justification." Substantial evidence supports this finding. The fear alleged by Erlbacher was not temporally linked to any event immediately preceding the homicide. And Johnson and Solberg concluded their fight without serious injury before Erlbacher left the bar, smirked, said "I got this," and calmly walked to his truck—the eventual murder weapon.

Even if Erlbacher could plausibly argue he was in fear before he got to his truck, he could have driven away from the bar. Instead, he collided with Pryor's truck twice before driving off, made a U-turn to come back and strike Solberg, circled around to strike him again, and circled back a third time to roll over Solberg's body. The opportunity to safely leave the scene at any of these points bars the defense of justification. *See id.* Additionally, Erlbacher's post-crime conduct—taunting Pryor, bragging about the killing, and lying to police—all undermined any professed self-defense claim. *See State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt.").

Last, we highlight another reason to affirm the district court: Erlbacher's use of force was unreasonable. Erlbacher, at most, feared an "ass beating." We have recognized that it is unreasonable to bring "a knife to a fist fight." *State v. Hall*, No. 11-1524, 2012 WL 4900426, at *8 (Iowa Ct. App. Oct. 17, 2012). The same is true of bringing a Chevy 1500 truck to finish a companion's fistfight.

**B.  Intoxication**

At trial, Erlbacher filed notice he would present a "defense of intoxication by alcohol," and he did so through witness testimony.  Erlbacher recognizes on appeal "intoxication is not a defense in the technical sense," but instead may be offered to negate the intent required for conviction.  *See State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986).  He specifically asserts the evidence of intoxication he presented at trial negated evidence of malice aforethought, deliberation, premeditation, and specific intent to kill.

The district court made express fact findings that frame our review of the claimed intoxication evidence:

> Erlbacher was certainly under the influence, but was not so intoxicated he could not form specific intent.  His intoxication may have contributed to bad judgment, but that is not a defense. Erlbacher was able to articulate a plan and carry it out.  Perhaps the best evidence that intoxication will not provide Erlbacher a defense was his ability to call his father and articulate his problem and where to pick him up.

We review these findings for substantial evidence.  *Cahill*, 972 N.W.2d at 27.  And we find substantial supporting evidence in this record.

While Erlbacher undoubtedly had been drinking, the district court correctly observed that he was able to execute a planned homicide.  He smirked, said "I got this," and then went to his truck.  He then used that truck to strike Solberg repeatedly before circling back to—as the district court put it—"complete[ ] the job" by driving over Solberg's body "one last time."  We also recognize the district court had the opportunity to review surveillance footage from the Pisgah bar depicting Erlbacher's speech and conduct the hour before he repeatedly ran Solberg over. Under our standard of review, we are bound by the district court's findings of fact

on intoxication. Iowa R. App. P. 6.904(3)(a). And as to the specific elements challenged by Erlbacher on appeal, we find substantial evidence supports each of them.

As captured in the model jury instructions quoted in the bench verdict, malice aforethought means "a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time." Further, "Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion." In challenging this element, Erlbacher urges that his conduct was "done in the heat of passion" or the product of serious provocation. But our law requires "great" provocation when a criminal defendant arms himself with a dangerous weapon. *State v. Holder*, 20 N.W.2d 909, 914 (Iowa 1945). And Erlbacher so armed himself by using his truck as a lethal instrument. *See State v. Oldfather*, 306 N.W.2d 760, 763–64 (Iowa 1981) (a vehicle can be a dangerous weapon). Then, "sufficient time elapse[d] to allow the blood to cool" between the evening's events and when Erlbacher decided to repeatedly run Solberg over; this too negates his serious-provocation claim. *See State v. Thomas*, 151 N.W. 842, 843–44 (Iowa 1915). And Erlbacher's words before and after the killing all point toward him acting with malice rather than passion. *See Odem*, 322 N.W.2d at 47.

As for premeditation and specific intent to kill, the district court was permitted to infer both elements if Erlbacher had the opportunity to deliberate and used a dangerous weapon. *See State v. Green*, 896 N.W.2d 770, 779–82 (Iowa 2017) (surveying history and re-affirming use of this permissive inference).

The court, again quoting the model jury instructions, defined "to deliberate" as "to weigh in one's mind to consider, contemplate, or to reflect." Applying this definition, we have little trouble concluding substantial evidence proved Erlbacher deliberated at some point when he walked away from the bar, got in his truck, started it, crashed into Pryor's vehicle twice, made a U-turn, and struck Solberg the first time. And if that were not enough, Erlbacher certainly deliberated when he drove away from Solberg and came back to strike him with the truck twice more. *See State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) (recognizing successive attacks "refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill"). Erlbacher's opportunity to deliberate, coupled with his use of the truck as a dangerous weapon, satisfied the State's burden. *See Green*, 896 N.W.2d at 779–82; *Oldfather*, 306 N.W.2d at 763–64.

## IV.    Disposition

Because substantial evidence supports the verdict, we affirm. The district court did not err in rejecting Erlbacher's justification and intoxication claims when he brought a truck to finish a companion's fistfight.

**AFFIRMED.**