# IN THE COURT OF APPEALS OF IOWA

————————————

No. 24-0793
Filed February 25, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Troy Roshawn Jenkins,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Scott D. Rosenberg, Judge.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

Troy Jenkins appeals jury verdicts for possession of a controlled substance and unlawful possession of a prescription drug. Because we find substantial evidence that he possessed a baggie of methamphetamine and also possessed a prescription drug not lawfully dispensed to him, we affirm those convictions.

## I.    Facts and Prior Proceedings

One evening in October 2023, Des Moines police officers responded to a homeowner's report of a trespasser inside a fenced yard. After the caller asked police to issue a trespass warning, Officers Mattingly Stone and Kyle Keesey arrived on scene. When the officers approached the suspect, he identified himself as "Troy Johnson" and denied having identification, being from Iowa, or having any prior contact with law enforcement.

When an initial records check yielded no results, the officers detained the suspect to confirm his identity. In their search of his person, they found a government-issued card identifying him as Troy Jenkins. During the same search, officers recovered a small, zippered pouch from his front pants pocket. Illuminating the pouch with a flashlight, they saw coins and jewelry alongside a torn corner of a plastic baggie containing a white substance. The officers suspected the substance was methamphetamine, and later testing confirmed both its nature as methamphetamine and its weight of 0.12 grams.

Officers also searched Jenkins's backpack and found a boxed prescription medication—Sumatriptan—in its original packaging with a pharmacy label bearing another person's name. Jenkins admitted he did not have a prescription for the medication. Later, before transporting Jenkins to the Polk County Jail, Officer Titus Deford conducted another search and

found a used glass methamphetamine pipe and a lighter in a pair of gym shorts Jenkins was wearing underneath his pants. The State charged Jenkins with possession of a controlled substance in violation of Iowa Code section 124.401(5)(2023), third offense, a class "D" felony, and unlawful possession of a prescription drug in violation of Iowa Code section 155A.21, a serious misdemeanor.[1]

At trial, the parties presented competing accounts regarding Jenkins's knowledge and possession of the incriminating items.

In proving its case, the State argued that Jenkins knew what he possessed based on the arrangement and character of the items recovered from his pockets and backpack. Officer testimony and body-camera footage described the pouch and backpack as containing numerous miscellaneous items, including the baggie and box containing the prescription drug. When officers showed Jenkins the torn baggie containing the white substance, he said it was "sugar," then "garbage," and then claimed he did not know what it was. According to the State, these shifting explanations—together with the pipe and lighter in his possession—proved his awareness of the methamphetamine. As for the prescription medication, the State emphasized that the box carried a pharmacy label identifying another person. The State also pointed to Jenkins's practice of collecting items with apparent street value and asserted that he selected and kept items he considered useful or valuable. In the State's view, that pattern, combined with his inconsistent descriptions, supported its position that he knowingly possessed both the methamphetamine and the prescription drug.

---

[1] Section 155A.21, in effect at the time of the offense, was repealed in 2024 and reenacted in substance as section 155A.23. *See* 2024 Iowa Acts ch. 1056, §§ 13, 27.

In his defense, Jenkins testified that he was unhoused and had collected various items from an abandoned homeless campsite shortly before encountering police. According to his testimony, he placed the items in his pockets and backpack and left the encampment without closely examining them. He asserted that after noticing a ring fall out, he sealed the zippered pouch and did not look inside it again. He maintained that he had not seen the plastic baggie in the pouch until officers showed it to him at the scene. When officers confronted him with the prescription box, Jenkins said he believed it contained "nicotine gum." He also acknowledged that he knew what methamphetamine looked like and confirmed he had a methamphetamine pipe on his person at the time of the encounter.

A jury found Jenkins guilty on both counts, and Jenkins appeals.

## II.    Scope and Standard of Review

We review sufficiency challenges for correction of errors at law. *State v. Meisheid*, 26 N.W.3d 800, 802 (Iowa 2025). We uphold the verdict if the evidence in support is substantial, which means it could convince a rational factfinder beyond a reasonable doubt. *State v. Manning*, 26 N.W.3d 385, 390 (Iowa 2025). Because our review is "highly deferential" to the jury, we view the evidence in the light most favorable to the verdict and take every reasonable inference that the jury could deduce from the evidence. *Meisheid*, 26 N.W.3d at 802.

## III.    Analysis

On appeal, Jenkins contends the State failed to prove that he knowingly possessed methamphetamine and that he knew the box he possessed contained a prescription drug.

To support the conviction for methamphetamine possession, the State had to prove beyond a reasonable doubt:

> 1. On or about October 29, 2023, [Jenkins] knowingly and intentionally possessed methamphetamine.
>
> 2. [Jenkins] knew the substance he possessed was methamphetamine.

Under that jury instruction, the State had to prove Jenkins "exercised dominion and control over the contraband, had knowledge of the contraband's presence, and had knowledge the material was [an illegal drug]." *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) (citation omitted). The knowledge requirement for knowing possession can be—and because of its subjective nature, often must be—inferred from the totality of the evidence. *State v. Rudd*, 454 N.W.2d 570, 571 (Iowa 1990), *overruled in part by, State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002).

Jenkins concedes that the State proved he possessed methamphetamine. But he argues that the State failed to prove that his possession was knowing and intentional. To that end, he maintains that he never examined the contents of the black pouch containing the baggie of methamphetamine after finding it at the abandoned homeless encampment. When confronted by police, he shifted his explanation of what the baggie was multiple times. This exchange followed his decision to mislead the police by giving them a false name and claiming he did not have a form of identification though he did.

The jury's role was to consider the totality of the evidence, including Jenkins's questionable credibility. The jury was free to "stack" inferences it drew from circumstantial evidence if the inferences were logical rather than "impermissible speculation." *State v. Jones*, 967 N.W.2d 336, 342

(Iowa 2021). And the State could prove Jenkins's knowledge of the nature of the substance through his actions, behavior, and statements. *See State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973).

The State contends that Jenkins's false story is evidence of his guilty knowledge. *See State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982). We agree. Although Jenkins denied knowing what was inside the pouch, a reasonable juror could infer otherwise based on his evasive responses to police. The jurors could also infer that he knew about the methamphetamine from his possession of drug paraphernalia and his storage of the methamphetamine beside other items he considered valuable. Jenkins's statements, combined with the surrounding circumstances, provided a sufficient basis from which the jury could reasonably conclude he knowingly possessed methamphetamine.

The State also charged Jenkins with possession of a prescription drug without a valid prescription. Iowa Code section 155A.21(1) provides "[a] person found in possession of a drug or device limited to dispensation by prescription, unless the drug or device was so lawfully dispensed, commits a serious misdemeanor." A conviction requires the State to show that Jenkins "(1) was found in possession, (2) of a prescription drug, and (3) the drug was not lawfully dispensed to him." *State v. Muilenburg*, No. 18-0412, 2019 WL 2152577, at *7 (Iowa Ct. App. May 15, 2019).[2]

Jenkins does not contest that he possessed the box containing the prescription drug. Rather, he insists he didn't know the nature of the

---

[2] *But see Muilenburg*, 2019 WL 2152577, at *8 (Tabor, P.J., specially concurring) (disagreeing with the majority's position that knowledge of the nature of the prescription drug was not an element of section 155A.21(1) and comparing the elements to Iowa Code section 204A.3(2) (1971) interpreted in *Reeves*).

substance. The State counters that citing *Muilenburg*, knowledge of the nature of the substance was not an element of section 155A.21(1).

But, in line with *Reeves*, the court instructed the jury that the State had to prove Jenkins knew the substance he possessed was Sumatriptan:

> 1. On or about October 9, 2023, the defendant knowingly possessed Sumatriptan.

> 2. The defendant knew that the substance he possessed was Sumatriptan.

> 3. Sumatriptan is a prescription substance.

> 4. The substance was not lawfully dispensed to the defendant.

Knowledge, although not specifically in the statute, was built into the law of the case by the jury instructions. The State did not object to the knowledge element included in the jury instructions. When "the jury [is] instructed without objection, the jury instruction becomes law of the case for the purposes of reviewing the sufficiency of the evidence." *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). Our court has applied this doctrine to elements the State contested on appeal. *See*, *e.g.*, *State v. Carroll*, No. 24-0997, 2025 WL 2058008, at *1 n.1 (Iowa Ct. App. July 23, 2025); *State v. Parmenter*, No. 18-1997, 2019 WL 6907457, at *5–6 (Iowa Ct. App. Dec. 18, 2019).

Here the State argues that the law-of-the-case doctrine does not extend to an element added to the jury instructions in error. It cites *Musacchio v. United States*, 577 U.S. 237, 243–44 (2016), where the supreme court explained that a sufficiency challenge is assessed against the statutory elements of the offense rather than a rogue element included in the jury instructions. But at least one state court has declined to adopt *Musacchio* when applying its own law-of-the-case principles. *See State v. Johnson*, 399

7

P.3d 507, 509–10 (Wash. 2017). Leaving this interesting debate for another day, we need not decide whether *Musacchio* should influence Iowa law. The outcome here is the same even if the law-of-the-case doctrine applies and we follow *Carroll*, 2025 WL 2058008, at *1 n.1 and our other unpublished decisions.

Applying our deferential review to the verdict, we find the evidence sufficient for a reasonable jury to conclude that Jenkins knew what he possessed was a prescription drug. Jenkins testified that he placed the box in his backpack while rummaging through a homeless encampment in the dark and did not examine it, later telling officers he believed it was nicotine gum. Meanwhile, Jenkins acknowledged looking for valuable items when scouring the encampment. Because Jenkins was assessing items of value, a reasonable jury could infer that Jenkins at least looked at the box before taking it and could see the prescription label identifying the drug and person to whom it is prescribed. Although Jenkins gave a different account, the jury could assess his credibility firsthand and reject his account based on inferences made from the entire record. *Jones*, 967 N.W.2d at 342.

In the end, substantial evidence supports the jury's verdicts.

**AFFIRMED.**